Dukes v. The State.

RICHARD DUKES, APPELLANT, VS. THE STATE OF FLORIDA, APPELLEE.

1. Where there is a deficiency of grand jurors, the Court, upon issuing a *venire*, may restrict the sheriff in his selection to persons drawn from the list furnished by the county commissioners under sections 2 and 3 of Chap. 1628, Laws of Florida, and the required number of persons may be drawn from such list by the county judge, the clerk of the Circuit Court and the sheriff. The statute does not prohibit such course, nor does it direct a different method, and this course is in entire harmony with the spirit and the general intention of the Legislature.

2. Where it is alleged that the Judge erred in refusing to give to the jury certain instructions prayed by defendant's counsel, and that the Judge charged the jury orally and not in writing upon certain points, the record of the case should show affirmatively that the alleged facts so alleged to be erroneous transpired. The recital in a motion for a new trial of such grounds of the motion is not enough, and the Court will not consider the matter so presented.

3. The Court charged the jury that " the killing being proved, though nothing else be shown, the offence is murder, the burthen of extenuation being thrown on the accused:" *Held*, that this is erroneous. Under the laws of this State, (1868,) it is for the jury to determine from all the circumstances of the case, whether the offense is murder in the first, second or third degrees, or manslaughter, or justifiable or excusable homicide. The presumption that the offence is murder, manslaughter, or justifiable or excusable homicide, is a presumption of fact to be found by the jury, and not a presumption of law to be drawn by the Court. Such a charge is not " exclusively on points of law," as is required by our statutes. The opinion of the Court in Gladden vs. The State, and Dixon vs. The State, 13 Fla. Rep., commented upon.

4. Where, under an indictment for murder, the Court charged the jury that " if you find the prisoner guilty, it is for you to say from the evidence whether he is guilty of murder in the first, second or third degree ; if you find from the evidence he is not guilty in either degree, you will return a verdict of not guilty," this is held to be error, as it precluded the jury from finding a verdict for manslaughter, and as they did not find him guiltless, they were forced to find him guilty of murder.

Appeal from the Circuit Court of the First Judicial Circuit for Jackson county.

Richard Dukes was indicted and convicted of murder in the first degree at the fall term, 1873, of the Circuit Court of Jackson county.

The following charge was given to the jury :

By the statues of Florida there are three degree of murder. The first is defined by the statute to be when the killing is perpetrated from a premeditated design to effect the death of the person killed, or any human being. The 2d is when perpetrated by any act immediately dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual. The 3d is when perpetrated without any design to effect death, by a person engaged in the commission of any felony.

Murder is defined to be when a person of sound mind and discretion unlawfully kills a reasouable creature, with malice-aforethought, either express or implied. Express malice is when one with a deliberate mind and formed design doth kill another, which design is evidenced by lying in wait, antecedent threats, former grudges, and concerted schemes, to do him some bodily harm. The law implies malice when one man kills another suddenly without any or without considerable provocation.

All homicide is presumed to be malicious, and consequently to amount to murder, unless when it appears upon evidence to be either justified, excused, or on account of accident, or self-preservation.

When the act is committed deliberately, with a deadly weapon, and is likely to be attended with dangerous consequences, the malice requsite to murder will be presumed ; the law infers that the natural or probable effect of any act, deliberately done, is intended by its actor.

The killing proved, even though nothing else be shown,

the offence is murder, the burden of extenuation being then thrown on the accused.

You must be satisfied from the evidence that every material allegation in the indictment has been proved as alleged.

To make a man principal in a murder, it is not necessary that he should inflict the mortal wound. It is sufficient if he be present, aiding and abetting the act; nor is it necessary there should be a particular malice against the deceased; it is sufficient if there be deliberate malignity and depravity in the conduct of the accused.

The dying declarations of a person who expects to die, respecting the circumstances under which he received a mortal injury, are admitted as evidence; they are admitted from the necessity of the case to identify the prisoner, and to establish the circumstances of the direct transaction from which the death results. Dying declarations must be made under a sense of impending dissolution and a consciousness of the awful occasion.

It is not necessary to prove expressions implying apprehension of immediate danger, if it be clear that the party does not expect to survive the injury, which may be collected from the general circumstances in evidence before you of his condition.

When dying declarations, made under the belief of impending death, are inconsistent with each other, it is the duty of the jury to weigh them and to determine which of them is to be believed. The death being established by the proof before you, it is your duty to enquire if the deceased came to his death by the unlawful act of the prisoner at the bar.

If from the evidence a reasonable doubt arises in your minds whether, on the one hand, the death of McDaniel resulted from accidental causes, or, on the other, from the deliberate and wicked act of the prisoner, you should give the prisoner the benefit of such a doubt.

If you believe from the whole evidence, beyond a reasona-

ble doubt, the prisoner wilfully, and without any justifiable cause, inflicted the wound on McDaniel, or aided and abetted in the infliction, and the wound was ultimately the cause of the death of McDaniel, you may find accused guilty. It makes no difference whether the wound was in its own nature instantly mortal, or whether it became the cause of death by reason of the deceased not having adopted the best mode of treatment; the real question for you to determine is whether in the end the wound inflicted by accused was the cause of the death. But it is for you to determine whether the death of the deceased was occasioned or accelerated by medicines administered, or the dysintery with which he was afflicted.

But if you believe from the evidence the wound inflicted was not dangerous in itself, and death was evidently occasioned by grossly erroneous and bad treatment, the original author will not be accountable. But if you believe from the evidence of the two physicians who have been examined and testified before you that the wound was mortal or dangerous, the person who inflicted it cannot shelter himself under the plea of erroneous or bad treatment.

When acts are of an official character, the concurrence of official persons, a presumption arises in favor of their due execution; for everything is presumed to be duly and rightly performed until the contrary is shown. So, also, when a person who is generally known and admitted as a public officer, may generally officiate without producing his commission or appointment, and his acts are *prima facie* legal.

It is for you to determine from the evidence whether George Robinson who issued the warrant exhibited on this trial was authorized to officiate and execute the warrant.

If any one under color or claim of authority *unlawfully* arrest or actually attempt, or offer to arrest another, he does so at his peril, and if the person whom he offers to arrest resists, and in his resistance kills the aggressor, it is not mur-

der in the first degree but may be of a lesser degree, according to the circumstances.

If from the evidence you are satisfied that McDaniel having in his possession a warrant from Justice of the Peace George Robinson of Jackson county, for the arrest of Harrod Gillam, Richard Dukes, Willis Dukes, Sanders Tazwell and George Wilson, believed he was lawfully authorized to arrest those parties, who were charged with a felony, and he so believing attempted to arrest them, then he was not so unlawfully acting as would constitute his acts such an offence against the person as would authorize these parties to resort to violent and extreme resistance, and if under such circumstances the prisoner, and those charged with him, did resort to violence which resulted in the death of McDaniel, it is homicide, and it is for you to say from all the evidence before you in what degree.

If a person upon meeting his adversary unexpectedly, who had intercepted him upon his lawful road, and in his lawful pursuit, accept a fight when he might have avoided it by passing on, the provocation being sudden and unexpected, the law will not presume the killing to have been upon an ancient grudge, but upon the insult given by stopping him on the way, and it will not be murder in the first degree.

If, the deceased was approaching the prisoner's path with the intention of assailing the prisoner, and became irresolute and stopped, or abandoned his intention, leaving the prisoner full liberty to pass, and the prisoner, with a design of slaying the deceased, brought on the attack, the killing is murder in the first or second degree, according to the circumstancs proved before you by the witness.

If you believe the prisoner at the bar conspired with others, with deliberate, malignant, and depravity of conduct, to effect the death of any human being, and you are satisfied from all the evidence and circumstances detailed upon this trial, together with the sworn statement of the prisoner, he did conspire with others with a premeditated design to effect the

death of McDaniel, and they did shoot and wound Mc-Daniel, and he died of the wound so received, and you are satisfied the prisoner was present, whether he shot the gun himself or not, he is equally guilty with the others, for all who were aiding and abetting the act are guilty of murder in the first degree.

But if from all the evidence and circumstances detailed before you, and the statement of the prisoner, which is evidence before you, you are satisfied beyond a reasonable doubt that the shooting of McDaniel was perpetrated by the prisoner, or he was present aiding and abetting the act, or that such act was imminently dangerous to others and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, and you are also satisfied that McDaniel died in consequence of the wound thus inflicted upon him, you may find the prisoner guilty of murder in the second degree.

But should you conclude from the whole evidence before you, beyond a reasonable doubt, that the shooting was done without any design to effect death, but was done while the conspirators were engaged in the commission of any felony, you may find the prisoner guilty of murder in the third degree.

If from all the evidence and circumstances connected therewith, that the shooting of McDaniel was done by the prisoner or those whom he was aiding and abetting, under circumstances justifiable or excusable, then you may acquit the prisoner.

If you are satisfied from the whole evidence, together with the statement of the prisoner at the bar, that when the parties met on the night of the occasion alleged in the indictment, McDaniel's party were the aggressors, and the accused endeavored to decline a struggle, but afterwards McDaniel and his party closely pressed them and they or either of them, to avoid their own destruction, shot McDaniel, it is homicide excusable.

As the sole judges of the evidence, it is for you to weigh the statements of the witnesses, their credibility, and the statement of the prisoner under oath before you, and you will determine how much you will receive as true, and how much you will reject, and after a careful review and consideration of all the facts and circumstances before you, render your verdict accordingly. You must, however, bear in mind in coming to your final conclusion that every reasonable doubt has been removed of the probability of guilt, for if there exist in your minds such a doubt, it is your duty to give this prisoner the benefit of it, and you will acquit him.

If you find the prisoner guilty, it is for you to say from the evidence whether he is guilty of murder in the first, second or third degree. If you believe from the evidence he is not guilty in either degree, you will return a verdict of not guilty.

Prisoner's counsel prayed for a new trial on the following grounds:

1. The verdict of the jury was contrary to the evidence.

2. The verdict of the jury was unwarranted by the evidence.

3. The verdict of the jury was unsustained by the evidence.

4. The court erred in overruling the pleas of abatement filed by the prisoner.

5. The court erred in reading the statutes of Florida passed in 1868 to the jury, defining murder in the first, second and third degree, and then telling the jury verbally, and not reducing it to writing before spoken to the jury, as to what was the punishment for murder in the first, second and third degree, and what the statute of 1868 said as to a general verdict.

6. The Court erred in not giving the following charges asked by prisoner's counsel to the jury, as follows:

1. A private person or persons are not authorized to arrest

for any offence, except the offence is committed in their immediate presence.

2. Neither is an officer authorized to arrest an offender of the law, unless the offence is committed in his immediate presence; all other arrests by an officer must be made by lawful authority. Lawful authority is a warrant issued by a judge, justice of the peace, or other officer empowered to issue warrants for arrests, and they must be founded upon an affidavit of some person making a specific charge of some offence against the laws of the land.

3. If you believe from the evidence that Erasmus McDaniel was not a constable or bailiff of Jackson county, but that he assumed to be a constable or bailiff, and possessed himself of the paper issued by the Justice of the Peace, George Robinson to Isaac King, for the arrest of Harrod Gillam, George Wilson, Sanders Tazwell and Richard Dukes, and called to his aid a posse, and arrested Harrod Gillam and George Wilson, that they broke his arrest, and fled from him, McDaniel and his posse, that McDaniel with his posse pursued them and were armed and arrayed in a warlike manner, and was seeking to arrest them again, with Sanders Tazwell and Richard Dukes, and while attempting the arrest of said parties by force he received a mortal wound, then you will acquit the prisoner.

4. If you believe George Robinson, a Justice of the Peace, of Jackson county, issued a paper purporting to be a warrant for the arrest of Harrod Gillam, George Wilson, Sanders Tazwell and Richard Dukes, for an offence charged to have been committed in Gadsden county, and without an affidavit made before him, charging an offence against said parties, that paper was no lawful warrant, but was void in law. And if you believe Erasmus McDaniel, the deceased, possessed himself of that paper and summoned an armed posse and was proceeding probably to arrest the parties therein named, he and all others assisting him were trespassing, and in arresting the parties committed a felony, and if they

attempted to arrest they were attempting to commit a felony, and the parties were justified in repelling him and his posse by force, and if deceased was killed or received a mortal wound from which he died, the defendant, if engaged in the repelling the deceased in his unlawful efforts to arrest him under said paper, would be justified, and you will acquit the prisoner.

If you believe from the evidence the deceased received a mortal wound, from which he afterward died, while engaged in an act that then was reasonable ground to apprehend a design on the part of deceased to commit a felony upon the prisoner and those with him, or to do some great personal injury to him or them, and there was imminent danger of such design being acccomplished, you will find the prisoner not guilty.

It is false imprisonment for a private party or posse, a person who is not a constable, bailiff or other officer of the law, to arrest a party or parties, and is under our statute a felony, and if slain in the act or attempting its commission, is justified, and not guilty of any offence and will be acquitted.

If you have a reasonable doubt as to whether the deceased, when he died, died of the wound, or whether the deceased was an officer, or whether he had abandoned his design to false imprison any of the parties, you will give the prisoner the benefit of these doubts, but they must be reasonable doubts, not trivial.

It is not necessary that actual danger to prisoner did exist at the time the deceased was wounded to justify the injury, but if there was a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and there should be imminent danger of such design being accomplished by the deceased and the parties acting with him, upon the prisoner and the parties with him, then you will acquit the prisoner.

If a man repel force by force in defence of his person,

habition or property, against one who manifestly intends or endeavors by violence to surprise, to commit a known felony such as murder, false imprisonment and the like, in those cases he is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and if in so doing the party is killed, the killing is justifiable and the party will be acquitted.

The fact that deceased and his posse believed that they were acting legally when they were not, their belief will not justify their action in committing or attempting to commit a felony, and if killed while acting, the killing is justifiable and the prisoner will be acquitted.

7. The court erred in charging as to what was murder in the first degree under our statutes, merely giving the definition of murder at common law only.

8. The court erred in charging the jury that the killing proved, even though nothing be shown, the offence is murder, the burden of extenuation being then thrown on the accused.

9. The court erred in charging on the subject of the dying declarations of deceased and admitted as evidence, that they are admitted from the necessity of the case to identify the prisoner and to establish the circumstances of the direct transaction from which the death results.

10. The court erred in charging "the death being established by the proof before you, it is your duty to inquire if the decease came to his death by the unlawful act of the prisoner at the bar."

11. The court erred in charging the jury, "If you believe from the whole evidence beyond a reasonable doubt, the prisoner wilfully and without any justifiable cause inflicted the wound on McDaniel, or aided and abetted in its infliction, and the wound was ultimately the cause of the death of McDaniel, you may find accused guilty."

12. And in charging that when acts are of an official character, or require the concurrence of official persons, a pre—

sumption arises in favor of their execution, for everything is presumed to be duly and rightly performed, until the contrary is shown.

13. And in charging " so also a person who is generally known and admitted as a public officer may generally officiate without producing his commission or appointment, and his acts are ' *prima facie* legal.' "

14. And in charging it is for you to determine from the evidence whether George Robinson, who issued the warrant exhibited on this trial, was authorized ; and also whether McDaniel was authorized to officiate and execute the warrant.

15. And in charging, " If any one under color or claim of authority unlawfuly arrest or actually attempt or offer to arrest another he does so at his peril, and if the person whom he offers to arrest resists, and in his resistance kills the aggressor, it is not murder in the first degree, but may be of a lower degree according to the circumstances.

16. And in charging, " If from the evidence you are satisfied that McDaniel, having in his possession a warrant from Justice of the Peace George Robinson of Jackson county, for the arrest of Harrod Gillam, Richard Dukes, Willis Dukes, Sanders Tazwell and George Wilson, believed he was lawfully authorized to arrest the parties who were charged with a felony, and he so believing attempted to arrest them, then he was not so unlawfully acting as would constitute his act such an offence against the person as would have authorized these parties to resort to violence and extreme resistance, and if under such circustances, and those charged with him, did resort to violence which resulted in the death of McDaniel, it is homicide, and it is for you to say from all the evidence before you, in what degree."

17. The court erred in the charges given after the above paragraph, and the charge taken altogether is erroneous as to defining the several offences under the indictment as murder in the first, second and third degrees, and not fully

defining and charging the jury as to what was justifiable homicide under the 5th section of the act of 1868.

18. The court should grant the prisoner a new trial, because upon the evidence before the jury, the prisoner is not guilty of the offence found by the verdict of the jury.

Which motion being refused, the case was brought to this court by writ of error and the following grounds of error assigned:

1. The court erred in overruling the plea in abatement.

2. The court erred in not giving the charges asked for by defendant's counsel.

3. The court erred in reading the statutes of Florida passed in 1868 to the jury, defining murder in the first, second and third degree, and then telling the jury verbally, and not reducing it to writing before spoken to the jury, as to what was the punishment for murder in the first, second and third degree, and what the statute of 1868 said as to general verdict.

4. The court erred in charging the jury that the killing proved, even though nothing else be shown, the offence is murder, the burden of extenuation being then thrown on the accused.

5. The court erred in his charge as to the dying declarations of the deceased, that they were admitted from the necessity of the case to identify the prisoner and to establish the circumstances of the direct transactions from which the death results.

6. The court erred in charging the jury, "If you believe from the whole evidence, beyond a reasonable doubt, the prisoner wilfully and without any justifiable cause inflicted the wound on McDaniel, or aided and abetted in its infliction, and the wound was ultimately the cause of the death of McDaniel, you may find accused guilty."

7. The court erred in charging that when acts are of an official character, or require the concurrence of official persons, a presumption arises in favor of their execution, for

every thing is presumed to be duly and rightly performed until the contrary is shown.

8. And in charging, " So also a person who is generally known and admitted as a public officer, may generally officiate without producing his commission or appointment and his acts are prima facie legal."

9. And in charging, " It is for you to determine from the evidence whether George Robinson, who issued the warrant exhibited on this trial, was authorized; and also whether McDaniel was authorized to officiate and execute the warrant."

10. And in charging that, " If any one, under color or claim of authority, unlawfullly arrest or actually attempt or offer to arrest another, he does so at his peril, and if the person whom he offers to arrest resists and in his resistance kills the aggressor, it is not murder in the first degree, but may be of a lower degree, according to the circumstances."

11. The court erred in charging, " If from the evidence you are satisfied that McDaniel, having in his possession a warrant from Justice of the Peace George Robinson of Jackson county, for the arrest of Harrod Gillam, Richard Dukes, Willis Dukes, Sanders Tazwell and George Wilson, believed he was lawfully authorized to arrest the parties who were charged with a felony, and he so believing attempted to arrest them, then he was not so unlawfully acting as would constitute his act such an offence against the person as would have authorized these parties to resort to violence and extreme resistance, and if under such circumstances, and those charged with him, did resort to violence which resulted in the death of McDaniel, it is homicide, and it is for you to say from all the evidence before you in what degree."

12. The court erred in the charges given after the above paragraph, and the charge of the court taken altogether is erroneous as to defining the several offences under the indictment as murder in the first, second and third degree, and

not fully defining and charging the jury as to what was justifiable homicide under the 5th section of the act of 1868.

13. The court should grant the prisoner a new trial, because upon the evidence before the jury, the prisoner is not guilty of the offence found by the verdict of the jury.

14. That the charge of the court was calculated to confuse and mislead the jury and did mislead them.

*J. F. McClellan* for Appellant.

1. The first error assigned is well taken.  See section 10, acts of 1868, p. 18.   This section provides for filling up the Grand Jury where there is a " *deficiency*," and an open venire should have issued.   The court proceeded under the 32d and 35th section, page 21, which provides for filling up the Grand Jury where there is a failure to "summons" the whole number.   This was error, and the court further erred in requiring the Clerk, County Judge and Sheriff to draw the jurors, when it should have been done by the Clerk alone.

2. The second error is well taken.   The charges asked for were proper.   The evidence in the case shows that deceased, E. McDaniel, was not an officer of any kind and that he had no legal warrant in his possession.   As to when a sheriff or private person may arrest :  Wharton's Cr. Pl. and Pr., 88 and 97, 13 Fla., 680.   McDaniel, in attempting to arrest, was guilty of false imprisonment (see act of 1868, sec. 18, page 91, as to assuming to be a constable ;) acts of 1868, page 68, section 43.   As to justifiable homicide and manslaughter, acts of 1868, page 63, section 5, 13.

3. The third error is well taken.   This error is covered by the ruling of the Supreme Court in this State.   13 Fla., 649 and 650.

4. This error is well taken.   The charge excludes the jury from fully considering the evidence in the case offered by the State to ascertain whether there was not extenuating or

Dukes v. The State.

justifiable grounds proven by the State.	Dixon vs. the State,
13 Fla., 637, 647 ; Ib., 629.

5. This error is so clearly against law that it is not neces-
sary to recite authorities upon it.	It was calculated to give
the dying declarations greater weight than they were enti-
tled to.

6. This charge excluded from the jury their right to con-
sider the grade of the offence as it was determined by the.
evidence.	The killing might be willful and not murder in
any degree.	It might have been manslaughter.	See acts
of 1868.	It is too broad and too indefinite.

7. There was no evidence in the case to justify this charge.
The evidence showed McDaniel was not an officer.

8. The same objection arises to this charge.

9. The 9th error is akin to the 7th and 8th.

10. There was no evidence to justify this charge.

11. The court in his charge here assigned as error is in
conflict with that assigned in the 10th.	And the charge is.
erroneous because there being no evidence that McDaniel
had any color of title to being an officer, the charge was
highly improper.	If a private individual makes or attempts
to arrest. he is a trespasser and commits a felony.	Noth.
ing can justify his acts or excuse him, unless when the party
commits a felony in his presence.

12, 13 and 14. The court by its charge wholly excluded
from the consideration of the jury whether the evidence in
the case reduced the killing if proved to be murder in the.
second and third degree, or to be manslaughter in the first,
second, third and fourth degree, or to be justifiable homicide.

*Cocke, Attorney General,* for Appellee.

The court below decided correctly in refusing a new trial.

There was no objection raised as to the admissibility of
testimony.

There was objection raised that the prisoners jointly in-
dicted with the defendant were not admitted as witnesses.

The court decided correctly on this point. Wharton's American Crim. Law, 6 ed., vol. 1, marginal page 790; 1 Greenleaf on Ev., section 363.

The plea in abatement was properly overruled. It was offered under the statute defining the duty and powers of grand jurors. The plea was defective in not stating that no *venire facias* was ordered. 22d section, page 21 of the act relating to jurors, acts 1868. The plea is not sustained by evidence, and the presumption of law is that the record discloses the fact, which is, that the presentment was made by a competent grand jury.

The second assignment of errors and also the third is answered by reference to the charge delivered by the court below. The definition of murder as given in the charge is correct, and agrees with the statute of 1869. 1 Russell on Cr., marg. p. 482.

The charge as to homicide is in accordance with the statute of 1868.

If the appellant would obtain the benefit of the law for the punishment of homicide, he should have proven alleviating circumstances. 1 Russell on Crimes, marg. p. 483.

The fourth exception is not well taken; the authorities sustain the charge as correct. 1 Russell on Crimes, 483 and notes; 2 How., 656; 9 Met., 93; Hill's case, 2 Grattan, 594; 11 Ga., 615; S. & M., 403.

Homicide with intent to kill is murder. 3 Selden, 385; 2 Wharton, section 944.

The fifth charge was proper. 2 Russell on Crimes, section 944-5.

The sixth ground of error cannot be sustained. The charge is in accordance with the act of the Legislature. Act of 1868, p. 63, section 1.

The seventh, eighth and ninth grounds of exception are clearly against recognized authorities on the subject. The points embraced in these grounds of error are decided by the

testimony of record in this case, and are presented for the court to decide.

In reference to the other points resting upon the evidence of record in this case, the Attorney General confined his argument to the record.

From the testimony it was evident that McDaniel, though not legally appointed as bailiff, nevertheless had in his hands a warrant authorizing him to arrest the prisoner, and the prisoner did not know that he was not an officer; nor does it appear that McDaniel knew that he was not an officer.

The prisoner could not question the lawful authority of a person with a warrant in his hands, legally issued.

Killing a person engaged as McDaniel was may be homicide. The instruction of the court, however, was in conformity to the most approved text writers, as well as modern decisions, upon which the authority of 2 Wharton, sec. 944, and cases therein cited, is again referred to.

There are some grounds set forth in the assignment of errors which are not contained in the bill of exceptions, and which could not have been inserted, because resting upon points of evidence not offered before the court below, nor offered in proof by way of mitigating the punishment from murder to homicide.

RANDALL, C. J., delivered the opinion of the court.

The first question which arises in this case, under the assignment of errors, is whether the plea in abatement to the indictment should have been sustained. The plea sets up substantially that there was a deficiency of grand jurors on the first day of the term, and that to supply such deficiency the court ordered the names of ten persons to be drawn from the list of jurors furnished by the Board of County Commissioners, which was done by the County Judge, the Clerk of the Circuit Court and the Sheriff, instead of by the Clerk alone; that on the second day of the term, one of the persons who had been regularly drawn and summoned as a grand

juror not appearing, the sheriff summoned one of the persons drawn on the first day of the term in his place. The statute controlling this subject provides that " in case of a deficiency of grand jurors in any court, writs of *venire facias* may be issued to the proper officer to return forthwith such further number of grand jurors as may be required." The law authorizes a special venire in case of a deficiency of grand jurors, and without prescribing any method by which the persons are to be selected, simply provides that it shall direct the proper officer " to return forthwith" the required number of grand jurors. It is not denied here that there was a " deficiency" within the meaning of the law. It is not denied that the venire was properly issued, or that it was served by the proper officer. The point made is that the sheriff, in selecting the individual, was not left entirely unrestricted in the exercise of his judgment, but was confined in his selection to one of ten men who, upon a previous day, had been drawn and selected from the persons designated as suitable to be jurors for the year by the authority upon whom that duty devolved. It is apparent that the law does not prohibit this limitation by the court of the judgment of the sheriff in the matter of selection. It does no more than direct him to return enough men to make up the deficiency, prescribing no method of selection and leaving the power and authority of the court over the matter unrestricted.

The whole matter is, therefore, reduced to this question : Can the court under such circumstances thus direct the sheriff ?

Under our jury system, the law contemplates an annual selection of three hundred persons from the list of registered voters, who are to constitute the body from which the several juries are to be drawn, and in selecting persons from this number to constitute grand and petit jurors, the law is so framed as to render it impossible for any officer of the court to organize a jury in which there is a single person who has been arbitrarily chosen or selected by him. We

thus see that the general purpose of the Legislature was to condemn the system of open venires, and restrict the officer in his selections to persons designated as suitable by another power, such designation being made by a drawing where there was no opportunity of knowing who would be the person selected. In the present case the court, instead of permitting the sheriff to make his selections from the body of the county, restricted him to such men as had been selected for the year and to a number drawn by the clerk, sheriff and county judge, in the manner provided for drawing the original jurors. There is no statute which prohibits this. There is no statutory provision to the effect that this selection shall be left to the discretion of the officer. This action of the court is in entire harmony with the spirit and intent of the law, is within its inherent power over the subject-matter, and subserves a good purpose in preventing the summoning of jurors who are loitering about the court house from idle curiosity, often with the desire and purpose of being selected in order to receive the compensation attached to the discharge of such duty. In the absence of any statute controlling the matter, we think it was clearly within the power of the court to adopt a rule, and we think the rule here adopted, being in entire conformity with the theory upon which the whole system is based, was eminently proper.

The appellant assigns as further error in the proceedings and trial, that the court refused to give the jury the instructions asked for by him, and that the court read from the statutes of 1868 the statutory definition of murder in the first, second and third degrees, and then instructing the jury verbally, and not reducing it to writing, as to the punishment prescribed for the crime, and what the statute said as to a general verdict.

We cannot discover these alleged errors, because it nowhere appears in the record that the appellant asked that the instructions should be given to the jury, or that the

13

judge read from the statute, or that he gave them any ver-
bal instructions.  It is true that counsel in his motion for a
new trial made these matters grounds of his motion, and
that the motion was denied ; but whether it was denied upon
the merits of the ground relied upon, or because no such in-
structions were prayed for, or that the other assumed facts
did not exist, does, not appear.  The record should show
affirmatively that the alleged proceedings and facts relied
upon actually occurred, and that the appellant excepted
thereto.  The recital in the motion made to the court is not
evidence to us that the grounds of the motion had any exis-
tence in fact.

The other grounds relied on by the appellant for a re-
versal of the judgment are that the court refused a new trial
upon the alleged erroneous instructions to the jury in the
charge of the court, which is given at length.  The material
points are that the court instructed the jury as follows :
" The killing proved, even though nothing else be shown,
the offence is murder ; the burthen of extenuation being then
thrown on the accused ;" and, " If you find the prisoner guil-
ty, it is for you to say from the evidence whether he is guilty
of murder in the first, second or third degree.  If you be-
lieve from the evidence he is not guilty in either degree,
you will return a verdict of not guilty."

The jury under this instruction found the appellant guilty
of murder in the first degree.

The statute of 1868, upon the subject of homicide, pro-
vides as follows :

" The killing of a human being, without the authority of
law, by poison, shooting, stabbing or any other means, or in
any other manner, is either murder, manslaughter or excusa-
ble or justifiable homicide, according to the facts and circum-
stances of each case.

" Such killing when perpetrated from a premeditated
design to effect the death of the person killed, or of any
human being, shall be murder in the first degree ;   *   *   *

when perpetrated by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be murder in the second degree;    *    *    when perpetrated without any design to effect death, by a person engaged in the commission of any felony shall be murder in the third degree.

" The killing of one human being by the act, procurement, or omission of another, in cases where such killing shall not be murder according to the provisions of this chapter, is either justifiable or excusable homicide or manslaughter."

The statute then proceeds to define what shall be deemed justifiable or excusable homicide, and manslaughter, the latter being divided into four grades or degrees.

This court on several occasions has held that such an instruction as that given in this case is erroneous, to-wit: " the killing being proved, even though nothing else be shown, the offence is murder, the burthen of extenuation being then thrown on the accused."

In Holland vs. the State, 12 Fla., 117, Gladden vs. the State, 13 ib., 623, and Dixon vs. the State, ib., 637, it is laid down that the killing being proved, all the circumstances of accident, necessity or infirmity, are to be satisfactorily proved by the prisoner, *unless* they arise out of the evidence produced by the prosecution.   The instruction given limits the defence to the facts which he shall be able to produce, and deprives him of the benefit of the evidence adduced by the State, which, perchance, may have shown that the killing was excusable or justifiable, or that the crime was manslaughter, and is too clearly error to require any further demonstration than the mere statement of the proposition.

But we are not satisfied that the rule as stated in the two cases last referred to is correct in another respect.   In the case of Holland vs. the State, the rule of the common law as to the burthen of proof was correctly given.   That case occurred before the enactment of the law of 1868, which de-

fines the crime of murder in the several degrees into which it is thereby divided, and the crime of manslaughter, which it also divides into several grades ; and the several classes of justifiable and excusable homicide, which it also defines with much particularity. But the cases of Gladden and Dixon, though occurring since the passage of the act referred to, were decided upon the exception taken that the charge of the court deprived the accused of the benefit of a defence which may have been found in the testimony adduced by the State, and without reference to the changes wrought by the recent statute, the language of which we have quoted above.

In the cases of Gladden and Dixon we gave the rule, as we understood it, of the common law, which rule we think is essentially changed by this statute. In those cases we held substantially that the fact of killing being proved, the offence of murder is established, and the accused must show the circumstances reducing the crime to a lower grade, or that the killing was justifiable or excusable, unless such circumstances appeared from the proofs on the part of the State. In considering the statute, it seems to us that this rule of the common law, as to the implication of premeditation and malice as a legal deduction from the mere proof of the act which results in death, is essentially superseded, and that under this statute no man may be convicted of murder without due proof that the crime has been committed, or, in other words, that the proof of the act must be such that malice may be legitimately inferred by the jury as a question of fact " from the circumstances of the case." For, says the common law, if one man kill another, the offence is murder, malice being presumed from the fact of killing. But, says the statute, " the killing of a human being without the authority of law, is either murder, manslaughter or excusable or justifiable homicide, according to the facts and circumstances of each case." And then the statute goes on to say what character of facts and circumstances shall constitute each particular degree of crime, or justifiable or excusable homicide.

If every homicide shall be presumed to be murder until the perpetrator show that the act is not murder, this emasculates the statute; for the design of the statute is to require that the degree or quality of crime shall be established by the proofs. The common law says the killing is murder; the statute says the *unlawful* killing is murder, manslaughter, or not criminal at all, according to the facts and circumstances. And so it is to be ascertained from *all* the facts and circumstances whether any crime has been committed, and it cannot therefore be allowed that a man shall be adjudged guilty of the highest crime upon proof of only one of the ingredients, the single fact of killing being but one ingredient of the crime. The very terms of the classification of the different degrees of murder and manslaughter, and of justifiable and excusable homicide, require something more than the proof of the killing, because it cannot be determined without a consideration of all the " facts and circumstances of each case " whether the act be murder or manslaughter, or the criminal intent be entirely wanting. The *degree* of crime, the *quality* of the act, must, under this statute, be determined, not alone upon a general presumption from an act, but upon the application of reason and judgment to all the facts proved, and thus to determine with what mind and intent the act was committed. It is not assumed that all presumptions must be ignored, or that no presumptions can be invoked in establishing the criminal intent, but only that under this statute the presumption must be one of fact, to be drawn by the jury from the proof of the circumstances attending the homicide, and not from the homicide alone. The principle involved is that all presumptions are in favor of innocence, and that the animus must be inferred from the manner of the commission of the act, and the conduct of the accused, and other circumstances of the case.

The indictment in this case charges specifically that the accused " feloniously, wilfully, without authority of law,

from a premeditated design to effect the death," &c., in the very language of the statute. The act is substantially a transcript of the statute of New York, and it was held in People vs. White, 24 Wend., 520, that where, in an indictment for murder, the crime is charged to have been committed with a premeditated design to effect the death of the person killed, the premeditated design, or express malice, must be proved, although the act be also charged to have been done with malice aforethought. Such a description cannot be rejected as surplusage. (See also State vs. Turner, Wright, Ohio, 30.)

In a recent case in the Court of Appeals of New York, (Stokes vs. the People, 1873,) the court, Grover, J., says : The instruction in effect was that the law implied motive, and consequently the crime of murder in the first degree from the proof of killing the deceased by the prisoner, and that upon this proof they should find him guilty of that crime, unless he had given evidence satisfying them that it was manslaughter or justifiable homicide. * * * This rule can be upheld by authority only, as it is obviously in contravention of principle and the analogies of the law. It is a maxim in the law that innocence is presumed until the contrary is proved. How is guilt established by proof of only one of the ingredients essential to constitute crime ? To constitute crime there must not only be the act, but also the criminal intention, and these must concur, the latter being equally essential with the former. *Actus non rerum facit, sed mens,* is a maxim of the common law. The intention may be inferred from the act, but this, in principle, is an inference of fact to be drawn by the jury, and not an implication of law to be applied by the court. (For a very able and interesting discussion of the subject, we refer to the American Law Review, October, 1873, Boston.)

It will be noticed that the judge further charged the jury, " If you find the prisoner guilty, it is for you to say from the evidence whether he is guilty of murder in the first, sec-

ond or third degree. If you believe from the evidence he is not guilty in either degree, you will return a verdict of not guilty." This is manifestly erroneous, for in terms the jury are precluded by this instruction from finding the accused guilty of manslaughter in one of its degrees, and hence, as they did not find him guiltless, they were forced to find him guilty of murder. The court should have given to the jury the provisions of the statute as to the crime of manslaughter, and allowed them to find a verdict of manslaughter if they saw fit.

The judgment of the Circuit Court is reversed, and a new trial awarded.