ELEANOR E. BRANDOW, Executrix, etc., Appellant, *v.* ABRAM W. BRANDOW et al., Respondents.

The will of B. gave to his wife all his real and personal estate during her life, she to provide and care for their children until they came of age, and directed that after her death "all the real estate which may be found" should be divided among the sons and the personal estate among the daughters. The widow died before the children became of age. In an action brought to charge the support of all the children, after the death of the widow, upon the real estate, *held*, that the provision for the support of the children terminated at the death of the widow, and, thereupon, the sons became entitled to a division of the real estate remaining; and that the same was not chargeable with the support of the daughters.

(Argued June 5, 1876; decided June 13, 1876.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, reversing a judgment in favor of plaintiff, entered upon a decision of the court, on trial at Special Term. (Reported below, 4 T. & C., 385.)

This action was brought by plaintiff, as executrix of the will of Nicholas Brandow, deceased, to recover moneys alleged to have been expended by the testator, as guardian for the infant children of Lucas E. Brandow, and in case there were no moneys to pay the same to charge the payment upon the real estate left by said Lucas. The facts, as found by the court, are, in substance, as follows:

Lucas E. Brandow died March 15, 1859, leaving a last will and testatment, the material clause in which was as follows:

"In the second place, after my debts and funeral expenses are paid, I do hereby will, in trust, to my wife Elizabeth, all my property, both personal and real, whatsoever and wheresoever during her lifetime; in consideration of which it shall be her duty to care, provide and educate our children until they are of age. After her death all the real estate which may be found is to be divided equally among my sons; and all my personal property which shall be found then shall be equally divided among my daughters."

He left him surviving his widow Elizabeth and eight minor children, four sons and four daughters.

He owned a large farm, the premises described in the complaint, and considerable personal property.

The will was admitted to probate, and Elizabeth Brandow, the widow, and said Nicholas Brandow were appointed administrators of the estate, with the will annexed. They qualified as such and entered upon the discharge of their duties. An action was brought in May, 1859, in behalf of Elizabeth, to obtain a construction of the will, and the General Term of the Supreme Court, in that action, decided that it gave her a life estate in and to the whole real and personal estate, and authorized her to use so much of the said estate, both real and personal, over and above the annual income thereof, as may be necessary for the maintenance and education of the said children during their minority. Elizabeth took charge of the children and all the real and personal estate; provided for, educated and maintained the children, and carried on the farm — using, selling and disposing of so much of the property, as was necessary for such purposes, from the death of Lucas in 1859, and executed and performed the duties imposed upon her under the trust created by the will until March 10, 1861, when she died. Upon her death Nicholas Brandow, the surviving administrator, who was the brother of Lucas and the uncle of the children, took upon himself the execution of the trust. He took possession of and carried on the farm, received its rents, issues and profits, provided and maintained all the children together upon the homestead; he paid for their clothes and schooling and expended moneys in their behalf as a family. These expenditures were made by him in good faith, and under the belief that he was the proper and legal guardian of the children, and that it was his legal duty as such, and as administrator, and under the terms of the will, to maintain, provide for and educate the children; said Nicholas thus acted for the infants from the death of Elizabeth until the 5th day of August, 1863, when he resigned his trust to Burton G. Morss, who, on

that day, was appointed general guardian for the infants. All matters pertaining to the infants, their lands, personal property and maintenance, were thereupon settled by and between Nicholas Brandow and the general guardian, and all property in his hands was turned over to the latter, excepting that the claims above stated were left unsettled, Nicholas supposing them to be proper charges in his account as administrator of the estate of Lucas, and for this reason were not presented.

On the 28th day of September, 1867, a final accounting was had before the surrogate in the estate of Lucas E. Brandow, deceased. The account rendered at that time by Nicholas Brandow, as administrator, contained the items of expenditure above specified; the general guardian Morss objected to these items, on the ground they were not proper items to be included in the said account; that they were charges against the heirs and not the estate. Thereupon said items of expenditures were taken out and a decree was entered closing up and settling said estate, exclusive of the said items; and Morss agreed, in consideration of the withdrawal of said claims, that he would pay to Nicholas the amount so expended by him out of any funds or property in his hands belonging to the said infants. The personal property belonging to the estate of Lucas was all exhausted in the course of administration, and there was no personal property in the hands of the general guardian, or otherwise, belonging to said infants from which to pay the plaintiff's claim.

As conclusion of law the court found that plaintiff was entitled to judgment as asked in the complaint.

*James B. Olney* for the appellant. The title to the real estate vested in the testator's sons, subject to the life estate of the widow, and the execution of the special power in trust in favor of all the infants. (1 Edms. Stat., 684, § 95; *Sterreche* v. *Dickinson*, 9 Barb., 516; 4 Kent, 313, 319; 4 East, 441; 3 Bur., 1446; 11 J. R., 171; 3 Sandf., 555; *Smith* v. *Bowsn*, 35 N. Y., 83; Adams' Eq. [6th ed.], 105; 1 Spence Orig. Jur., chap. 81.) The power in trust survived the widow, and

the court will execute it. (*Dominick* v. *Sayre*, 3 Sandf., 555; 2 J. Ch., 1; 5 Barb., 190; 14 J. R., 537; Wil. Eq. Jur., 84; 1 Edm. Stat., 684, 685, § 100.) The infants are entitled to the whole estate for their support and maintenance during minority. (4 N. Y. S. C., 387.)

*R. H. King* for the respondents. The trust, as to the support and maintenance of the children, continued only until the death of the widow. (3 R. S. [5th ed.], 157, § 22; id., 22, § 87; id., 2, § 5; *Hawley* v. *James*, 16 Wend., 61; *Gott* v. *Cook*, 7 Paige, 521; 24 Wend., 641; *Post* v. *Hover*, 30 Barb., 312; *Scott* v. *Monell*, 5 N. Y. Sur. R., 431.)

ANDREWS, J.   The Supreme Court, in the action brought to obtain a construction of the will of Lucas E. Brandow, decided that it vested in Elizabeth Brandow, his widow, a life estate in the whole real and personal property of the testator, and an authority to use so much of the real and personal estate beyond the annual income thereof as might be necessary for the education and maintenance of the testator's children during their minority. That action was tried at Special Term in 1859, and the judgment of the Special Term was affirmed by the General Term. All the persons interested were made parties, and no appeal was taken from the judgment of the General Term. That judgment is therefore conclusive as to all questions determined and adjudged thereby. Two questions only were adjudicated: first, that the widow took under the will a life estate in the whole property, and, second, that it conferred upon her a power to use the *corpus* of the property, if necessary, for the support and education of the minor children. The judgment did not purport to determine whether the power would survive the death of the widow, or that the provision for the support of the children during their minority out of the *corpus* of the estate was a continuing provision, terminable only by the expiration of their several minorities. The judgment, therefore, is not *res adjudicata* in respect to these questions.

The intention of the testator, derived from the language of the will, was to give to his sons his real estate, and to his daughters his personal property, subject to the life estate of the widow, and to the support and education of the minor children out of the whole property during the widow's life, and that at her death the actual division should take place. The language of the will is express and unambiguous, viz., "after her (the widow's) death, all the real estate which may be found is to be divided equally among my sons, and all my personal property which shall be found then shall be equally divided among my daughters." The preceding clause is as follows: "I do hereby will in trust to my wife Elizabeth all my property, both personal and real, whatsoever and wheresoever, during her lifetime. In consideration of which it shall be her duty to care, protect and educate our children until they are of age." The trust is by its terms limited to the life of the widow. The gift of the life estate is the consideration for the duty imposed upon her to provide for and educate the children. But the duty ceased with their minority. After the children arrived at age the widow was no longer bound under the will to maintain them. And this we think is the purpose and intent expressed in the words "until they are of age," and that this clause of the will cannot be construed as indicating an intent to charge the whole estate with the support of the minor children after the widow's death.

It is inconsistent with the absolute gift in possession upon her death, contained in the succeeding clause. We are not at liberty to say that the testator designed that his minor children should be supported out of the estate after the death of the mother, if she should die before they reached their majority, when the clear meaning of the words used is opposed to this supposed intention. He may not have contemplated the contingency of the death of his widow before that time, but it is the duty of courts to give effect to the intention expressed in the will, whatever they may suppose the testator would have done if the particular event which has happened had been foreseen.

In the views we have taken it is immaterial to consider the question argued at bar, whether the will created a valid express trust, or a power in trust. Whichever it was, it was limited to the life of the widow and terminated at her death. The judgment in this case charged the land of the testator with a lien to the amount of $297.03, in favor of the plaintiff's intestate, for expenses incurred by him from 1861 to 1863 in maintaining the minor children of the testator. Lucas E. Brandow died in 1869, leaving a widow and eight minor children, four sons and four daughters, surviving him. Soon after his death his brother, Nicholas Brandow (the plaintiff's intestate), and the widow were appointed administrators of his estate, with the will annexed. In 1861 the widow died, leaving Nicholas Brandow the sole administrator. He was, under the statute, guardian in socage of the infant sons of his brother, and after the death of the widow he assumed to act as guardian of all his brother's children, and continued to act as guardian until another guardian was appointed in 1863. During this time he incurred the expenses which by the judgment are charged on the land devised by Lucas E. Brandow to his sons. They were incurred in making a home for and supporting all the children as one family. There is in the findings no separation of the items chargeable to each child, and there is no proof from which it can be ascertained what part of the expenses incurred was for the support of the sons and what part for the daughters. The judgment proceeds on the theory that the will charged the support of the minor children on the whole estate after, as before, the death of their mother. This construction of the will cannot be maintained. The land after the mother's death was not chargeable with the support of the daughters, and the judgment was therefore erroneous. We should be glad to find a legal ground for upholding the judgment of the Special Term. The plaintiff's intestate acted in good faith. The expenses he incurred were reasonable, and he acted, as is apparent, with a sincere desire to do what was best for his brother's children. But the defendants may insist upon their

legal rights, and so insisting we have no alternative but to affirm the order of the General Term, and direct judgment absolute to be entered for the defendants upon the stipulation, without costs to either party in this court.

All concur.

Order affirmed and judgment accordingly.