Mr. Justice Westcott
delivered the opinion of the. court.
The bill in this case is filed by Jenkins and wife in the Circuit- Court of Jackson county against Alexander S. Merritt.
The equities set up in the bill are that Ethington J .Merritt died on the 19th day of November, A. D. 1873, having made his last will and testament to the effect following:
First. I give, devise and bequeath unto my son Alexander S. Merritt six thousand dollars in bonds of the Western and Atlantic Railroad Company of- the State of Georgia, and four thousand dollars of the bonds of the New York, and New Haven Railroad, and the lands on' which my1 dwelling-house is situate, and the lands adjoining the same, on the east side of the Chipóla river, to be held upon the' following trust and confidence and to and for the following uses and purposes: The said A. S. Merritt will pay annually to my daughter Anna Maria Merritt, and my friend Sarah Elizabeth Rawls, the interest accruing on said’ bonds during the lifetime of my said daughter Anna Maria Mer--ritt;•■provided that the said Sarah E. Rawls shall reside with my said daughter, and if the said Sarah E. Rawls •should cease to live with my said daughter, or my said daughter should die, the said Sarah E. Rawls not having left her, then and in that case the said A. S« Merritt is to pay to the said Sarah E. Rawls one thousand dollars in full for all her interest in said bonds, and her interest in said bonds is to belong to my daughter Anna Maria Merritt. And the said trustee A. S. Merritt is to hold the, real estate above mentioned for the use and benefit of my daughter Anna Maria Merritt and my friend Sarah' E.-Rawls for and during,,the life,of my said daughter; but the said Sarah E. Rawls’ interest therein is to cease at the death of my s^id daughter, or when the said Sarah E. Rawls shall cease to live with my said daughter on said place, in Which ¿latter event the interest in said real estate intended hereby !for the said Sarah E. Rawls ir .to. cease.and vest in my said daughter, and in -the event of the death of *85 my said daughter the said railroad bonds, subject to the payment of one thousand dollars to Sarah B. Rawls, as above stated, and the real estate hereinbefore mentioned, the said trustee is to deliver the same, discliargd from this trust, to my sons Alexander S. Merritt and Ethington J. Merritt, Jr., and I hereby give, devise and bequeath- the same to my said sons, their heirs and assigns forever.
Second. I hereby direct my" executors to deliver to my friend, Sarah E. Rawls, the bedstead, bed and furniture, and the silverware owned by her aunt, my late wife, and intended by her for the said Sarah B. Rawls; the said silverware does not include a silver ladle which belongs to me, and which I give to my daughter-in-law, Mary E. Merritt.
Third. I give to my daughter, Anna Maria Merritt, and my friend, Sarah E. Rawls, a liberal and generous support for a year after my death, to be supplied, out of -my estate by my said executors.
Fourth. I wish it to be understood that the payment of one thousand dollars to Sarah E. Rawls is to be paid upon the condition that she lives with my daughter, Anna Maria Merritt, until her death, and on that condition, only.
Fifth. I give, devise and bequeath unto my sons, Alexander S. Merritt and Ethington J. Merritt, Jr., all the balance of my property, real, personal and mixed, to them, their heirs and assigns forever.
Sixth. I appoint my sons, Alexander S. Merritt and Ethington J. Merritt, Jr., executors of my last will and testament, made by me thi3 23rd day of July, A. D. 1873.
“That upon the death of the testator at the date stated A. S. Merritt accepted the trusts created by the will, en-. tered upon the execution of the same, and continued to' pay over the annual interest on the bonds due to your * oratrix up to the 19th day of November, 1876, since which time he has refused to pay the same or any portion of .it,; that your oratrix continued to live ’on said place with the said Anna Maria Merritt until about the 17th day of March, 1876, when the said Alexander S. Merritt induced her to leave said place and come to reside with him in Marianna, for the sole purpose, as plaintiffs believe, to defeat, if possible, your oratrix’s right to the interest upon said bonds that he might reap the benefit of it himself; that your oratrix has continued to reside'at said place ever since the death of the testator, and is, and has been willing that the said Anna Maria Merritt should reside there with her, and .believes that if the said Anna Maria Merritt was left to her own will, she would ; return and live with her that she has so expressed herself to your oratrix since . she left, but having an imbecile mind • she is an easy. victim of the said A. S. Merritt; that it was on account of her imbecility of mind and incapacity to take care of herself, -recognized by her father, Ethington J. Merritt,' that said will was so worded as to require your oratrix to live’with her in order to secure the benefits of the provisions of the will.
“Thsft your oratrix. lived with the said testator as a member of 'his family for seventeen years, his wife being her aunt; that she had a great deal- of the care of the said Anna Maria Merritt before testator’s death, and that she continued to give her the same caTe and attention up to the time she was induced to leave through the devices of .the said Alexander S. Merritt; that she* is informed and believes that she persistently refused to leave until overpow-suaded by one H. B. Grace, whom the- said Alexander S. Merritt employed for the sum of fifty dollars for that purpose; that after being induced to leave her and go to* the said A. S. Merritt to live, she ran away from his place and came back to your oratrix and told her that she had rather live in a little bathing-room attached to the dwelling on a dry crust of bread than to have to go back «and.. live with her brother; that she believes her attachment to •her is as strong as it ever was; that she has received messages purporting to come from her to the effect that she intended to return, and that before she could be induced to go back to her brother the second time she informed your oratrix that her brother threatened to take everything she had away and not leave a piece of bread for her to eat if she would not return to his place and live there; that the said Alexander S. Merritt is the sole surviving executor of said will, and owns the remaining interest in said bonds and land. Plaintiffs then charge that his taking his sister, Anna Maria Merritt, from the old homestead and from the care and attention of your oratrix is against the intention of the will, and to defraud your oratrix as well as the said Anna Maria Merritt of the benefit secured to them under the will and to himself profit thereby.
Plaintiffs pray an account of the interest alleged to be due, and for decree for that sum with interest thereon, and for a further decree directing the trustee to pay over annually her share of the interest upon said bonds so long as the said Anna Maria Merritt shall live and your oratrix resides upon said place and is willing to live with the said-Anna Maria Merritt.
ANSWER OF DEFENDANT.
Defendant, A. S. Merritt, answers admitting that he accepted the trust as alleged, affirming that he has refused to pay the interest upon said bonds since November, 1875, because he believes that complainant, Sarah E. Jenkins, formerly Sarah E. Rawls, has forfeited all right and title to the same by her intermarriage on the 5th day of October, 1874, with complainant, Wilbur E. Jenkins; that by saitj marriage she became subject to the direction, will and , control of her husband, and that so'soon as'she entered upon | her married life she ceased to live with Anna Maria, and. ' forfeited'all right to any of the provisions of the will. De-r ■ fendant denies the charge as to his employment of Grace to induce his sister to come and live with him, and affirms that soon after his father’s death designing persons caused his sister to become unfriendly to him, and that this unfriendliness was kept up by those nearest to her for some time, and that during this time he treated her with the utmost kindness and had for her a brother’s love. Defendant further answers that he is informed and believes that his sister, Anna Maria, opposed the marriage and objected to the husband’s coming to the homestead to live; that his sister is now about forty-four years of age; that she has been raised tenderly and in his father’s lifetime lived bountifully; that for some years she has been afflicted with disease peculiar to her- sex that greatly impairs her nervous system, and that having a mind not naturally strong her mind is often in acute sympathy /with her bodily afflictions and is more or less impaired. Defendant alleges that he has never for one moment sought to take advantage of this weakness; that he has felt for her great sympathy, and has at all times been willing for her to make his house her home. He alleges that shortly after the marriage of plaintiffs he is informed that both of them made an effort to procure the said Anna Maria to make a deed of gift to the said Sarah E. of all her interest in the property given to her by her father’s will; that in three months after their marriage they inaugurated at the old homestead a different order of things than that contemplated by the will; that the husband took, entire control, of the house and plantation, he and his wife then contracted with and taking the said Anna Maria to board with thenyfor the year 1875, at ten dollars per month, and that this state of facts existed all the time Anna Maria lived there during that year; that during the year 1875 his sister made complaint to him that the mode of living of complainants was so different from *86 what she was accustomed to that she was unable to stand it, and could not so continue to live; that defendant advised her to set up for herself, and if she could not do that she could make his house her home; that during that year the said Wilbur F. Jenkins was heard frequently to dcelare that he intended to show the said Anna Maria that the said Sarah E. was no longer subject to her beck and call; that she was his wife and freed from the said Anna Maria forever thereafter; that in November, 1875, he paid to the said W. F. Jenkins for his wife one half of the interest due upon said bonds; that he believes he acted in abuse of his trust and that the said Sarah E. had forfeited all title and right to the interest thereon since her intermarriage with the said Wilbur F. Jenkins on the fifth day of October, 1874, and he asks that this answer be treated as a cross bill, and that the plaintiffs be decreed to pay back the" same.
Defendant further answering says that in October, 1875, his sister, Anna Maria, voluntarily came to his house and has ever since macle it her home, and that he feels that the ties of kindred and his duty in her condition is to make his house a welcome home to her, and that he is at all • times willing. to extend that kindness to her which her afflictions so urgently demand; that the said Wilbur F. i and Sarah E. have enough tó do to take care of their own1 family, which is increasing as time is passing; that in Jan-, uary, 1876, he asked the complainant Wilbur F. what he1 and the said Sarah E. expected to do for the said Anna Maria, lo which he replied that they would board her for ten dollars per month when she was well, but that when she was indisposed she must pay more; that respondent informed him that, if such were his views, he would care for her himself, and from that time he has refused to pay to the said Sarah E. any part of the provision for her under the will, believing that she has ceased to live with the said .Anna Maria in the intention expressed in said will; that the said Wilbur F. has been in possession of the lands since 1875, paying no rent therefor for the year 1875, pay- ■ ing a small rent for 1876, and agreeing to pay $75 for the half interest for the year 1877.
Defendant then claims the right to recover all sums paid since the marriage, and asks that his answer be treated ‘as a cross bill.
To so much of this answer as relates to the matter of cross bill, there were exceptions taken by plaintiffs. By consent, this matter excepted to was subsequently stricken out. There were replication proofs, hearing and a decree dismissing the bill at* plaintiff’s cost. From this decree this appeal is • taken. A reversal is sought here upon- two grounds: The first ground is alleged error in “overruling the several objections of complainants to the interrogatories propounded by defendant.”
The record fails to disclose any action in reference to these objections taken by the court. The record recites simply that the cause was heard “upon bill, answer, replication and evidence.” While there, are some objections taken to the interrogatories of the defendant by the plaintiff to be found in the record, yet no action of the court in this matter is shown. It does not appear that any motion to suppress the depositions, or any part thereof, was made ‘ by the plaintiffs below, (the .appellants here,) and in such - case the objection must be. treated as abandoned.
The discussion of the only remaining ground upon which a reversal is sought involves a consideration of the merits of the cause' as it appeared from the pleadings and proofs. That ground is that the court erred in denying the prayer of the complainant’s bill, and ordering the bill to be dismissed.
We have already .stated, .the substance,, of the. pleadings.
The substance of the testimony may be briefly stated as follows:
Miss Sarah E. Bawls was a niece of the second wife of the testator and had known the testator and his daughter, her co-legatee, Miss Anna Maria Merritt, since 1857. Her residence with the family .commenced during her childhood ; for a long time she was treated as a member of the family and “assisted in keeping house.” Miss Anna Maria Merritt, the daughter of the testator, was of “weak and imbecile” mind, “addicted to imprudent habits, requiring .care and special attention.” She was peculiarly a proper subject for the sympathy as- well as the care and attention of Miss Bawls, and there is no question that, during the life of the testator, such sympathy was felt and such care and attention extended to her.
The testator died on the 19th of November, 1873, leaving the will, a copy of which is set forth in the beginning of this opinion. The defendant, the son of the testator, is the executor of this will as well as the trustee named to execute the trusts created for the benefit of his sister, Anna Maria Merritt, and the inmate and friend of his father’s family, Miss Bawls. He is also residuary legatee and de-visee. After the death of the testator, Miss Merritt and Miss Bawls resided together upon the old homestead until March 17, 1876. On the fifth of October, A. D. 1874, Miss Bawls married Wilbur F. Jenkins. Td this marriage Miss Merritt at first objected, but afterwards consented. Mr. Wilbur F. Jenkins after his marriage resided with his wife and Miss Merritt upon the homestead place and assumed the general control of the household as its head. To this no objection was made by Miss Merritt so far as the testimony discloses.
At the death of her father there was for some time no communication between Miss Merritt and her brother, the defendant, and she was not friendly to him. In 1875 this feeling of unfriendliness ceased and she made her brother her agent. He rented Mr. Jenkins the land for the year 1876.
Thre is some difference as to the terms upon which Miss • Merritt boarded with Mr. and Mrs. Jenkins. Mr. and Mrs. Jenkins state that her part of the rent of the plantation^ was to pay her board, while the defendant states that Jenkins was to charge his sister $10 per month if well, and more if sick.
There is conflict in the testimony as to the treatment of Miss Merritt by Mr. and Mrs. Jenkins before she left» to ’ live with her brother. There is evident bitterness and ill. feeling between the defendant and the complainants. Mr. and Mrs. Jnkins affirm that every necessary care and attention were extended to Miss Merritt; that she left under the advice and at the solicitation of her brother, whose interest it was, they affirm, to destroy the kind relations existing between the parties and to defeat the purpose of the ‘testator. Mrs. Jenkins swears that she extended the same care and attention to Miss Merritt after her father’s death that she did while he was alive; that when Miss Anna Maria Merritt was sick she occupied the same room with her and gave her all necessary attention, and that she was uniformly kind. On the contrary, the defendant testifies that his sister sent for hiin, expressed a desire to go to his house, and that, as an affectionate brother should have done, he invited her to make his house her home. The only witness who speaks to the fact of treatment, except Miss Merritt and the plaintiffs, was the defendant’s witness, Grace, who swears that he was at the house where the parties resided; that there was a difference between the ■ “table fare” of the father of Miss Merritt and that of Mr. and Mrs. Jenkins; that the fare of the latter was not so good as the former, and that he heard Mr. Jenkins in a conversation with Miss Merritt say that Bettie was now *87 his wife and no longer at her beck and call. On cross-examination, he, however, says that there was plenty on the table;, that it was as good as the ordinary country fare; that he never heard any complaint on the part of Miss Merritt when Mr. and Mrs. Jenkins were present, and that he saw no unkindnes3 on their part toward her.
As to this witness, (H. B. Grace,) John P. Saunders, “a minister of the gospel,” swears that he had a conversation with him early in the year 1877; that Grace stated that he had been paid fifty dollars by defendant to get him to negotiate with Miss Merritt to ‘get her in a good humor with him, and that it took him two weeks to do it, and that afterwards in the summer of 1877 he (Grace) said the fifty dollars was for attending to a land trade. This statement is denied by Grace, and the defendant says that no money was paid except for service in connection with a land trade.
Miss Merritt, when asked to state “fully” the reasons for leaving the old homestead, said: “I left on account of the marriage of Miss Bettie Rawls to W. E. Jenkins; I disliked Mr. Jenkins.” She states again: “I ceased to reside there on account of Mr. Jenkins.” When asked generally whether Mrs. Jenkins refused to give her attention when sick, she answered that she did. In answer to a like suggestive question she answered’that there was a great change in the manner of Mrs. Jenkins after her marriage; that after the marriage she “dropped” her altogether. She says, “I was in delicate health and could not get the food necessary; I was charged extra prices for the food necessary; that cakes were charged to me; this occurred only when I was sick.”
The defendant, the executor and trustee, maintains that Mrs. Jenkins (formerly Miss .Rawls) has forfeited the right to one-half of the interest accruing upon the bonds held by him in trust by a failure to comply with the conditions upon which she was to continue to receive the money. This is the only question in the case.
The defendant, through his attorney here, ’insists that the legacy was based upon a condition precedent which has not been performed.
Reducing the argument to its elementary propositions, it is that the condition of a co-residence upon the place is violated by the marriage of Miss Rawls and the alleged change in the treatment of Miss Merritt by Miss Rawls after her marriage.
To the questions thus submitted we address ourselves.
We cannot agree with the first proposition that the condition here in reference to the interest of Miss Rawls in these bonds is upon a condition precedent.
The legacy here, so far as the interest upon the bonds was concerned, was conditioned upon co-residence of Miss Rawls upon the homestead plage with Miss Merritt, and this is;*a condition subsequent. True, co-residence must exist in-order that the interest should continue, but the condition is upon the continuance of a state of circumstances then existing, and the estate and interest of Miss Rawls vested upon the death of the testator. The legacy here was upon condition subsequent.
The title passed to the trustee, the estate was vested and was to continue so long as there was a continuance of a then co-residence upon the place. 1 Pet., 376; 9 Wheat., 325; 25 Maine, 525; 1 Jarman on Wills; 8 Pet., 326; 14 How., 488.
Chief Justice Marshal in 3 Peters, 374, spéaking for the court in reference to this general subject, says, “it is certainly well settled (2 Bos. and Pull., 295; 1 D. and E., 645,) that there are no technical appropriate words which always determine whether a devise be on a condition precedent or subsequent. The same words have been determined differently, ' and the question is always a question of intention. If the language of the particular clause or of the whole will shows that the act upon which the estate depends must be performed before the estate can vest, the condition is of course precedent, and unless it be performed the de-visee can take nothing. If, on the contrary, the act does hot necessarily precede the vesting of the estate, but may accompany or follow it, .if this is to be collected from the whole will, the condition is subsequent.”
In Maverick vs. Andrews, 25 Me., 525, there was a devise to the wife on condition that she should support and maintain in a omfortable and suitable manner the mother of the testator, should she survive him. This was held to be a condition subsequent, the devisee being entitled to enter upon the estate and enjoy it until forfeited by non-compliance with the condition.
Here, upon the death of the testator, the estate vested in the trustee with such powers as usually atend such trusts, and the beneficial use and interest passed to the legatee, to continue so long as her then co-residence with Miss Merritt upon the homestead place continued.
Having determined the nature of this condition, the only question remaining to be determined is, has there been such an act by the legatee, Miss Rawls, as works a forfeiture.
Defendant insists that such acts have been done by this legatee. These acts consist of a marriage and subsequent treatment of Miss Merritt by Mr. and Mrs. Jenkins.
The marriage is admitted. As to the treatment there is conflict in the testimony.
It is insisted by the respondent that the “marriage rendered it impossible for her (Miss Rawls) to comply with the terms of the will; that when she ceased to be Miss Rawls and became Mrs. Jenkins, she was no longer the person provided for by the testator; that so soon as she entered upon her married life she ceased to live with Anna Maria and forfeited all right to any of the provisions of the will; that by her marriage she lost her individuality, she changed ' her status and became subject to the control, direction and disposition of her husband.”
The general proposition that a legacy to A. or B. is forfeited by marriage, when- no such condition -is in the will, cannot certainly be maintained. While the marriage of a female results in a change of name or address, it does not change the personal or individual existence of the party named. Her rights under such a will remain. It is true that upon her acquisition of her interest in a will, it may become, in a manner, subject to the control of her husband, but the will not prohibiting the contracting of such relation, it cannot be said that such power or control, as results from its subsequent existence, is prohibited. This suit is restricted alone to the-interest of Miss Rawls or'Mrs. Jenkins, (for there is a personal identity,) and concerns only her interest arising from the provisions of the will as to interest upon the securities. . She is entitled to this money' upon the sole condition of co-residence upon the place. There is no other expressed condition. Nothing is provided as to the details and nature of this co-residence. The ’ testator does not direct whether the expenses of-the housp-1 hold shall be paid in- common, or that the one or the other ’ of the ‘ ladies should board with the other. It certainly . does not contemplate that Miss Rawls should, from what she* was to receive, support and maintain Miss Merritt.. There was a- provision made for Miss Merritt, and from this fund her maintenance and support was expected to come.
It is insisted .that the marriage relation results in its being the' duty of the wife to comply with the wishes or directions of her husband as to her place of residence. This may be true, but it is not even pretended in this case that such power has been exercised. On the contrary, for the year 1876, (the time at which Miss Merritt left .the home- *88 iBtead place,) the respondent, the trustee, rented the l,&nd to Mr. Jenkins, the husband, and Mrs. Jenkins, Mr. Jenkins and Miss Merritt were then residing together upon the place. It is also insisted that, looking to all the circumstances, there is an implied condition of celibacy upon a violation of which the legacy was to cease and determine.
It is unquestionably reasonable to presume that the testator expected and desired that Miss Rawls should extend towards his affliicted daughter that care and attention which her situation required. This care and attention, however, is not in any way mentioned as a condition in the will. The testator, as to this matter, trusted to the gratitude and the character of Miss Rawls, as well as to the affection for and attachment to his daughter before that time exhibited by Miss Rawls.
Admitting that such was the desire, the intention and expectation of the testator, and that such unexpressed but reasonably presumed purpose and intention is effective to make such care and attention a condition, (a matter which we do'not decide,) we enquire whether marriage alone rendered Miss Rawls unable to give Miss Merritt such aid and assistance. In connection with this question we will also examine the evidence as to treatment. The precise condition of Miss Merritt we cannot ascertain from the testimony. She is said to be of “imbecile” mind. This is simply weakness of mind; but to what extent that weakness exists is nowhere shown. She is also said to have “imprudent habits.” This is very general. Without some knowledge of the degree of weakness of mind, as well as the character and nature of the imprudent habits, we cannot, with any degree of certainty, define the nature of the care and attention required by her situation. If this mental and physical state was of such a nature as to preclude the possibility of a married woman giving the necessary attention, it devolved upon the defendant to establish it. The fact of co-residence being proven, and the fact of marriage being admitted, it devolved upon the defendant to show that Miss Merritt’s condition after marriage was such that such attention as was necessary could not be given by a married woman.
Taking the proposition generally, we cannot see that marriage alone, or in the abstract, necessarily rendered it impossible for Miss Rawls to give, or cause to be given, to Miss Merritt all the attention necessary. This would depend greatly upon the character of the man she married. If his wishes were that she should give no attention to Miss Merritt, or that she should not reside with her, a compliance with such a request would involve a forfeiture of •the legacy. .If, however, she married a man of disposition kind, sympathetic and considerate,. one who would appreciate a feeling of gratitude to the source from which his wife derived substantial aid and assistance, then marriage would relieve her of many strictly business duties and enable her to give, or cause to be^given, greater attention to her afflicetd friend and co-legatee. In this case the evidence • does not establish any unkind treatment by Mrs. Jenkins. The only testimony that looks to this direction is that of Miss Merritt. In considering the testimony we must recollect her condition. What she states is in reply to leading questions; is for the most part general, and when it relates to acts in detail is not satisfactory. Miss" Merritt left, she states, on account of Mr. Jenkins, and yet she states that while she first objected to the marriage, she afterwards consented to it when Mr. Jenkins stated that he intended to'marry and take Miss Rawls from the place. Her complaint, when precise acts are spoken to, is that she was charged extra prices for necessary food for one in delicate health; that cakes were charged to h<?r; that this occurred only when she was sick. The respondent States thar Miss Merritt paid the sum of $10 per month for board, and the evidence shows that the fare was as good as the ordinary country fare. An extra charge for delicacies we cannot say was improper, there being no obligation upon Mrs. Jenkins to supply and pay for such articles.
With this testimony of Miss Merritt’the testimony of Mr. and Mrs. Jenkins is in conflict. It devolved upon the trustee to prove at least such a state of circumstances as would create .the necessity for and justify a separation between the parties. In connection with this subject it may be remarked that the defendant and trastee rented the place to plaintiff Jenkins for the year 1876, thus showing a considerable degree of confidence in him. Marriage alone does not destroy the fact of co-residence, nor does it necessarily create a cause for or justify a voluntary separation by the act, in this case, of Miss Merritt, nor is any treatment justifying separation proved.
We have thus treated this question upon the hypothesis that there might have been such a state of circumstances as would justify a separation by Miss Merritt, and a forfeiture of the legacy by Miss Rawls. The proof establishes no circumstances of this character, and for this reason it is-unnecessary to announce any legal principle upon such a hypothetical state of facts.
Leaving this discussion upon the facts, we will state the .principles of .law which we think are applicable to the subject.
This is a testamentary disposition of personal property, a bequest, upon condition subsequent, the property being given over upon non-performance of the condition.
A condition of co-residence of one legatee with another, both being at the time unmarried ladies, one the daughter of the .testator requiring care and attention, tying of weak mind and imprudent habits, the other being the niece of the testator’s wife, for a long time an inmate of his family, an assistant in “keeping house.”
" There is no ambiguity in the will. The condition is simple co-residence upon the homestead place. A few years after the death of the testator the niece of his wife marries, and his daughter leaves, the place.
The law is, that where the bequest is made in plain terms and upon a condition plainly named, no additional condition can be added where there has been a change of circumstances from those existing at the date of the execution of the will and the death of the testator, upon what • may, be presumed would have been the wish of the testator under such changed circumstances. The testator may or may not have contemplated the marriage of Miss Rawls, but in the absence of anything relating to the subject in rthe will; the court cannot make it a condition of the enjoyment of the bequest. As stated in the case of Madison vs. Chapman, 5 Jur., N. S., 277, “it cannot be conjectured what the testator would have done if the state of things that has happened had been present to his mind.” It is true that there are many cases in which the strict signification of technical terms is varied to meet the obvious intention and purpose of the testator; thus the words heirs and heirs of •the body are often held to be descriptive of persons, and as words of purchase and not of limitation, but where there is no ambiguity, and “where the meaning of the words used by the testator is clear, it must be adopted, whatever the inclination of the court may be.” (Stewart vs. Jones, 5 Jur. 5 N. S., 299.)
We have a strong illustration of- this rule in the case of Brandow vs. Brandow, 66 N. Y., 401. In this case the provision of the will was, “I do hereby will in trust to my wife Elizabeth all my property, both personal and real, whatsoever and wheresoever, during her lifetime. In consideration of which it shall be her duty to care, protect and educate our children until they are of age.” Upon the death of the widow the question arose whether the ex *89 penses of the care and education of the minor children wag a charge upon the estate. Any one would presume such to liave been the desire of their father. The court of appeals say the -words of the will aTe plain,.the estate of the wife was a life estate, and the trust was limited to it. In answer to a suggestion that if such a state of things had been contemplated by the testator he would no doubt have so desired, the court say he may not have contemplated the contingency of the death of the widow before the children were of-age, but it is the duty of courts to give-effect to the intention expressed in the will, whatever they may suppose the testator would have done if the' particular event which has happened,had been foreseen.
As remarked by the Chancellor in the case of Wilbraham vs. Scarisbrick, (1 H. L. C., 188, Story’s Eq. Jur., 1074, B. & F., 11 Ed.,) “such imputed intentions are in most respects speculative and uncertain, and where any are ' to be found which the construction of the clause in question, according to its ordinary meaning, will not carry into effect, or may defeat, it is more probable that such failure will arise from the testator not having contemplated or provided for the very many events which may be supposed' as possible to arise in the family, than that he used such expressions in any other than the ordinary meaning. The clause being plain and simple in its language, we do not think the rules of construction, now considered as settled, will warrant the clause receiving a construction other than according to its ordinary meaning, without its appearing satisfactorily from other parts of the mil that the language was used by the testator in some other sense.” (See also: 27'Vmt., 485.)
The only authority called to our attention in this connection by the respondent is the general language of Mr. Greenleaf, (Greenleaf Ev., 287,) to the effect that the object of the couTt in, construing a will is to follow the intention of the testator, and to do this “the- court may put ■ themselves in the place of the party and then see how the terms of the instrument affect the property or subject-matter.” Tliis applies to cases where the meaning and application of words used cannot be ascertained without evidence of all these facts and circumstances, and to cases of like character. No authority can be found for the view that the circumstances surrounding the testator can be considered to determine what would have been his intention in the event of a change of the., circumstances existing at his death not anticipated by him.
The general rule is, that to admit evidence, of extrinsic and collateral facts, there must be some difficulty in applying the words of the mil to the subject-matter, or to the persons interested in the bequest or devise.
Again, the condition which we are to add here is in restraint of marriage. In view of the law in relation to that subject, we can entertain no doubt at all that we would violate the uniform rule which controls the matter by implying such condition.
Even express conditions prohibiting marriage, as a tíondi- . tion of enjoying personal legacies, whether such conditions. are precedent or subsequent, are not favored by the courts. 2 Ver., 573; 2 Atk., 616; 1 B. C. C., 303; 10 Ves., 230; 3 Whar., 575; 10 Pen. State, 75; 8 Maryland, 517; 6 Mass., 169; 3 Red., 244-47-61.
Mr. Justice Story thus states the general principle, (1 Story’s Eq., 280,) “conditions annexed to gifts, legacies and devises in restraint of marriage are not void if they are reasonable in themselves, and do not directly or virtually operate as an undue restraint upon the freedom of marriage. If the condition is in restraint of marriage generally, then, indeed, as a condition against public policy and the due economy and morality of domestic life, it will be held utterly void.” For very clear statements13 of the. principle see also 1 Fonbl. Eq. 1, Ch. 4, §10, note q.; 1 Simons, N. S., 37.
Lord Mansfield, in Long vs. Dennis, (4 Burr., 2055,) said, “conditions in restraint of marriage are odious, and ,are therefore held to the utmost rigor and strictness.” Lord Eldon seems to have thought this expression too general, (19 Ves., 19,) but his views are not in conflict with the general rule as announced by Mr. Justice Story.
Certainly, in view of these rules, we cannot by implication add a condition in restraint of marriage, when we find nothing in relation to the subject in the will.
There is but one other principle, as we conceive, applicable to this case in its various phases, which we have not' considered. That is the question of the forfeiture of a conditional legacy.
The respondent, as a defence, insists upon a forfeiture by condition broken.
The case of Hogeboom vs. Hall, (24 Wend., 148,) treats at some length of this question. In that case the testator gave a farm to his son in fee, upon condition that his daughters should have the use and occupation of a room in his dwelling house and be provided with food, raiment and duel as long as they remained unmarried. The daughters left the house and remained away voluntarily for several years. There was other evidence from which the daughters insisted that there was a forfeiture of the estate. Mr. Justice Bronson, for the court, says, “conditions which destroy an estate are taken strictly, and although a forfeiture must be enforced when clearly established, it should not prevail upon doubtful construction of evidence. The .plaintiff insists on a forfeiture, and the burden lies upon >her of showing the condition broken.”
It is unnecessary to elaborate a principle so generally recognized' as this, and we say nothing more on the subject. ¶
Entertaining these views, the result is that the decree of the Circuit Court must be reversed. r>
The decree is reversed. The case will be remanded with directions to state an account between the parties upon principles consistent with this opinion, and for further proceedings conformable to law and equity in this behalf.