## FRANCES, A SLAVE, APPELLANT VS. THE STATE.

1. During the trial of any case not capital, the Court may, in the exercise of a *sound discretion*, permit the Jury, under the proper charge, to separate.

2. The indictment of a Slave need not state the name of the owner of such Slave.

3. A Slave indicted for an assault and battery, not alleged to have been committed upon a white person, should be tried under the 6th Sec. of the Act of November, 21st., 1828, entitled "An Act relating to crimes and misdemeanors committed by Slaves, free Negroes and Mulattoes."

4. When the record contains a copy of the indictment endorsed by the Foreman of the Grand Jury, *A True Bill,* and a plea of not guilty has been put in, a trial had, a verdict of guilty found, and motion for an arrest of Judgment made and argued, without an objection that it does not appear by the record that the Grand Jury returned the Bill into Court endorsed by the Foreman, " *A True Bill;*" the objection cannot be made in the Supreme Court on appeal in a case not capital.

5. When no exception is taken to the charge of the Court below, in a criminal case like this, and a motion was made for an arrest of Judgment and for a new trial, without alleging it as a ground for such motion there, it is too late to make the objection in the Supreme Court.

Appeal from Putnam Circuit Court. [The reporter has not been furnished with a copy of the record, from which to extract the evidence given in to the Jury, and must, therefore, refer to the opinion as furnishing all the facts he is enabled to give.]

*McQueen McIntosh*, for Appellant.

*G. W. Call, Jr.*, for Attorney General. for the State.

DOUGLAS, J. delivered the opinion of the Court.

At the fall Term of the Circuit Court for Putnam County, in the year A. D. 1853, the Grand Jury who were then and there empannelled and sworn to enquire in and for said County, found and returned into Court an Indictment, endorsed by the foreman, "A true bill," against Francis a Slave. She plead Not Guilty. At the Spring Term A. D. 1854, the case came on for trial, a Jury was empannelled and sworn who returned a verdict of guilty against her.

Whereupon her Counsel moved an arrest of Judgment and for a new trial upon the following grounds.

*First.* That the verdict was contrary to evidence.

*Second.* That the verdict was contrary to law.

*Third.* Because the State has failed to allege in the indictment with sufficient certainty, that Frances is a slave or free person of color, and does not allege that she is the property of any person.

*Fourth.* That the prisoner is not subject to indictment under the act of 1832, but should be punished before a Justice of the Peace under the act of 1828.

*Fifth.* That the prisoner is not subject to indictment under the last clause of the act of 1828, inasmuch as the indictment no where alleges that the assault was committed upon a white person. Which motion was after argument overruled, and a Judgment was entered, from which the prisoner has appealed to this Court, and puts in the following assignment of Errors, viz.

*First.* That the Court below erred in allowing a portion of the Jury to disperse before completing the pan-

el, without the consent, and against the remonstrance of the prisoner by Counsel.

*Second.* That the Court below erred in refusing to arrest the Judgment and grant a new trial upon the grounds set forth in the motion. These having been already stated, it is unnecessary to repeat them.

*Third.* That the Court below erred in failing to arrest the Judgment, because of errors and omissions on the face of the record.

*Fourth.* That the Court erred in its charge to the Jury.

*Fifth.* That the indictment is defective in substance.

The first error assigned (we think) is not well taken. It has been the practice in Florida ever since the organization of our late Territorial Government, a period of more than thirty years, to permit Jurors in all cases of misdemeanors, and indeed in all cases not Capital, to disperse under the charge of the Court, when it adjourned for the night &c, unless there was some special reason for keeping them together, and it is now too late for the Courts to disturb that practice. In capital cases they have *in favorem vitæ,* very properly been kept together. In Virginia, however, it has been held that " where several days are taken up in completing the panel, on a trial for murder, it is not necessary that the Jurors who have been sworn, shall be committed to the custody of the Sheriff until the whole number of the panel is completed." 5 Gratten R. 676, U. S. Dig. vol. 4, p. 290 No. 18. The dispersion in the case at Bar was before the panel was completed.

The following authorities were cited by the prisoner's

Counsel in support of the position we are now considering, viz. 3 Blackstone, p. 379, *Note*. 2. Barn. and Ald. p, 462. 8 S. and M., cited in U. S. Dig. 1847, p. 329.—U. S. Dig. 1848, p. 240, No. 540–41, 5 Georgia Rep. 85 and 10, Georgia Rep. 511. Stone's case, in the note to Blackstone, was treason, a capital offence. The case cited, from U. S. Dig. 1848, have very little bearing upon the question; that from 5 Georgia is a capital case. That from 10 Georgia was a case of larceny. Pending the trial, the Court was about to adjourn for the night, the presiding Judge enquired what should be done with the Jury. To which the defendant's Counsel replied that they were willing the Jury should disperse, and they were permitted to do so. Afterwards this dispersion was assigned by the prisoner's Counsel as a cause for a new trial upon a motion made therefor, after a verdict of guility, but the Court overruled the motion, saying, no application should be addressed by the Court to Counsel to allow the Jury to disperse. It is odious to refuse, and calculated to prejudice the party with the Jury, who withholds his consent. It is a *discretion* says the Court which should be very cautiously exercised under any circumstances. We are unable to determine from the manner in which the case from S. and M. is cited, whether it was a capital case or not. And the case in Barn. and Ald. seems rather against the position. That is the case of the King vs. Herrin, Wolf and Levi who were indicted for a conspiracy, a mere misdemeanor. The Jury in that case as in this, were permitted to separate for the night, and a motion was made for a new trial grounded on the suggestion of two facts; first, that the Jury dispersed before the verdict was given, and secondly,

that, that circumstance was not known to the parties until after the trial was concluded. The Judges delivered their opinions *seriatim*. Abbot Ch. J. said, "I am of opinion, that in a case of misdemeanor, the dispersion of the Jury will not avoid the verdict. I found my opinion upon the fact, that many instances have occured of late years in which such dispersion has been permitted in the case of a misdemeanor; and every such instance proves that it may be lawfully done."

"It is said, indeed, that these instances have taken place by consent. The consent of the defendant (he said) can make no difference, and ought not to be asked." Bayley, Justice, said: "If the case were one where the propriety of the verdict admitted of a doubt, it would be very proper for the Court, as an additional reason for granting a new trial, that the jury had so separated. But I of am opinion that that circumstance standing alone, is not sufficient to vacate the verdict." Halroyd, J., said: "I do not find any authority in the law which states that the mere separation of the jury in a civil action, or in the case of a misdemeanor, is a ground for vacating the verdict." Best, J., observed, "It is said there has been a mistrial on account of the separation of the jury, but I am alarmed at the extent to which that proposition would go. I agree with my brother, Bayley, that no sound distinction can be taken between a separation for a shorter or a longer time. The true rule (he said) is, that it is left to the discretion of the Judge to say whether the jury are to be permitted to separate or not, and this we consider the true rule;" and it is fully sustained by the case of Davis vs. the State, 15 Ohio Reps., as cited in U. S. Dig., 1847, p. 329, No. 59 ; and it cannot, says that Court,

be questioned on error. We agree with that Court that this discretion should be cautiously exercised, and especially in cases highly penal, and when much excitement prevails.

In order to dispose of the *second error* assigned, we return to the grounds of the motion in arrest of judgment, &c., in the Court below, which are made the grounds of this assignment, and we observe that the two first were abandoned at the argument here. The third is, that the indictment does not state the name of the owner of Frances. This we deem wholly unnecessary. The State to sustain the indictment, must prove the ownership; every slave knows or can readly ascertain who is his owner, and therefore can prepare his defence, so far as that is concerned, without being told that fact. In regard to the *fourth* and fifth grounds alleged in arrest, &c., it is to be observed that this indictment is founded upon the sixty-first section of the act of November 1st, 1828, entitled "an act relating to crimes and misdemeanors committed by slaves, free negroes and mulattoes,"(Duval Comp., 228; Thomp. Dig., p. 541, No. 20,) which declares, "that if any negro or mulatto, bond or free, shall commit any other crimes or misdemeanors against the laws of this State, it shall be lawful for the jury convicting him of the same, to punish him by any number of stripes, as they may award, not exceeding one hundred." Assault and battery is an offence, a misdemeanor against the laws of this State; it is a common law offence, and the common law is in force here by a special provision of our statute. Thomp. Dig., p. 21, No. 2. It is one of the *other* misdemeanors against the laws of this State, in regard to which (except by these general

terms,) the act of November 21st, 1828, does not provide.

The *third error* assigned, (under which the appellant insists that there is no record evidence of the finding of this bill of indictment by the Grand Jury,) is not embraced by the bill of exceptions, and was not made a ground of the motion in arrest of judgment in the Court below, either upon the first or second verdict, (for there were two,) the first of which was set aside, but not for this cause. The appellant having plead not guilty to the indictment, and had two trials upon it in the Court below, and having failed to take any notice of it, either on the motion in arrest of judgment, &c., or in her bill of exceptions, may, we think, be considered as having waived it.

It is too late, (say the Court in the case of the People vs. Griffin, 2 Barb. Supreme Court R., 247,) to object to the organization of the Grand Jury finding the indictment, after issue has been joined on the plea of not guilty, the jury empanneled to try the case, and the case, on the part of the people, gone through with. This case, although the point is not precisely the same, seems to be applicable to the principle. Here the objection is, that it does not appear by the record that the Grand Jury returned the bill into Court endorsed, 'a true bill' by their Foreman. But the Clerk, in obedience to a writ of certiorari, issued by order of this Court, has sent a copy of the indictment, on the back of which is the following endorsement: "In Circuit Court," "State of Florida vs. Frances, a Slave," "Assault and Battery, A *true Bill*." "Joshua Sykes, Foreman, filed November 3d, 1853. S. Glinski, Clerk. Witnesses. Amelia Hudley, E. P. Andrews, Mrs Wickwin." The question,

in the case in Barb. Reports, as in the case before us, is whether there was a valid indictment. If the Grand Jury there, was not organized according to law, they could not return a valid indictment. In this case the Grand Jury may have returned a valid indictment into Court, and the Clerk may have neglected to record their finding, or having recorded it, he may (indeed must,) have failed to copy it into the record sent up. Had the objection been made in the Circuit Court, it would of course have been very easily ascertained, whether such a record existed or not, and if not, the bill being there, the fact in regard to its return could have been ascertained, and if a defect in the record existed it could and doubtless would have been corrected. The copy of the record sent here, was very badly made out; it did not appear from it, what Judge held the Court, the term when the indictment was found, or when the case was tried, or that any Grand Jury was empanneled.

These defects, however, were cured by the admission and consent of the parties by their Counsel, after which it became necessary, upon a suggestion of diminution to send down a certiorari to cause other deficiencies to be supplied.

Under our law, (said the Court in McKinney vs. the People, 2 Gilman, 540, U. S. Dig., 1847, p. 305, No. 16,) technical objections should not be so much favored in criminal cases, as under the more severe statutes of England in former times.

Another objection is, that the Court erred in its charge to the jury. But as no exception was taken to it, in the Court below, and it was not made a ground of the motion in arrest of judgment, &c., there, it could not be taken ad-

40

vantage of here, were it erroneous, but having looked into it, we do not discover it to be so.

In misdemeanors, the strictness which formerly prevailed, has been much relaxed in England, (as appears by the case above cited from Barn. and Ald. 462, and many more might be adduced,) as well as in this country, and *to some* extent in all cases not capital ; and it does not appear that any injury has resulted therefrom.

From a careful review of this case, we find no error in the judgment of the Circuit Court, and it is therefore affirmed.