STATE v. GRAHAM ET AL.

1. **Larceny:** PRESUMPTION FROM BAD ASSOCIATION OF DEFENDANTS: INSTRUCTION. Where, on an indictment for the larceny of money from the person of the prosecuting witness, there was evidence tending to show that the house where the larceny was committed was a house of ill-fame, and that one of the defendants, against whom the evidence of guilt was strong, was the keeper of the house, and that the other defendants were inmates thereof, it was error to give the jury an instruction from which they might infer that, because the defendants may have been partners in the crime of keeping a house of ill-fame, they might be presumed to be guilty together of the larceny committed therein.

2. **Criminal practice:** MISCONDUCT OF DISTRICT ATTORNEY. Courts should hold district attorneys to a strict observance of the statute which forbids them to refer to the fact that a defendant has not testified on his own behalf; and for a violation of the statute a judgment of conviction will be reversed.

*Appeal from Marshall District Court.*

FRIDAY, OCTOBER 19.

THE defendants, Alexander Graham, Sophia Graham, John Dames, and Hattie Dillon were indicted for the crime of larceny. Verdict and judgment were rendered against them. Alexander Graham and John Dames were sentenced to the penitentiary for ten years, Sophia Graham for six years, and Hattie Dillon for two years. They all appeal.

*Sutton & Childs* and *Graham & Cady*, for appellant.

*Smith McPherson, Attorney-general*, for the State.

ADAMS, J.—The defendants were charged with stealing seven hundred dollars from one Hilderbrand. The evidence shows that Hilderbrand is a resident of Boone; that in April, 1882, he visited Marshalltown, where he remained two or three days; that while he was there he was much of the time in a drunken debauch; that, meeting the defendant, Alexander Graham, with whom he was previously acquainted, he was invited by him to go to his house, and accepted the invitation; that the next day, which was Sunday, he visited Graham's house again, and took dinner; that before he left Graham's he became intoxicated, and lay down on a bed with his boots on; that afterward he was induced to lie on a sofa. Afterward, according to his testimony, Graham pulled him from the sofa, jerked him upon his feet, and told him in a rough manner to go home. From Graham's he went to a hotel. Upon reaching there he looked in his pocket for his money, and says that he missed seven hundred dollars. There was evidence tending to show that the Grahams had formerly kept a saloon, and that their house, where the larceny is alleged to have been committed, had the reputation of being a house of prostitution.

I. The court instructed the jury that they might consider "the habits of the parties defendant at the time, whether they were living together, acting together, or together were engaged in a common purpose to take Hilderbrand's money, if any was taken." The giving of this instruction is assigned as error. If the prosecuting witness is to be believed, the money was taken from him, while lying in a state of intoxication, by Graham, and by no one else. He said: "Mr. Graham came to where I was lying, and unbuttoned my coat, and took out my pocket-book. I remember when Mr. Graham came back with the pocket-book

1. LARCENY: presumption from bad association of defendants: instruction.

and put it into my coat pocket. I lay there some half hour after that, until Mr. Graham took hold of me. I got on my feet then and we went down stairs." The defendant, Hattie Dillon, was an inmate of the house. But upon what ground she was convicted we are unable to discover. The prosecuting witness, it is true, in his examination in chief, testified that, before his pocket-book was taken by Graham, she came to him while he was in a state of intoxication, and tried to unbutton his coat, but was not successful. But on cross-examination he testified that the only thing which she did was to take hold of his coat and tell him to get off of the bed. No act of hers, then, is proved but that. A verdict must, we think, have been found against her upon the ground that she was living with the Grahams, and that the house had the reputation of being a house of prostitution. The court instructed the jury that they might consider whether the defendants were living together, and what their habits were. We think that the court erred in this instruction, and that it resulted in the conviction of at least one person against whom there was no legitimate evidence whatever. If the larceny was committed by any of the defendants, (of which there is some doubt,) it was beyond question committed by Alexander Graham. Now, where a larceny is proved to have been committed by the proprietor of a house of ill-fame, the other inmates of the house cannot be convicted of the same crime merely upon the ground that they were living with the proprietor, and were addicted to bad habits. We ought, perhaps, to say, in this connection, that the defendants introduced no evidence of good character. The instruction, therefore, could not properly have been given upon the theory that they had. It seems to have been given merely for the purpose of connecting them together. But it does not follow that the defendants were partners in the crime with which they are charged, because they may have been partners in a different crime with which they are not charged.

II. The defendants moved for a new trial on the ground

of the misconduct of the district attorney. The defendants, Alexander Graham and Dames, testified on the trial, but the other defendants did not. The defendants filed the affidavit of Mr. W. O. Childs, in which he states that "the district attorney, in his speech to the jury, referred to the fact that some of the defendants had not testified, and said if they had testified they would probably have testified the same as Graham did." They also filed the affidavit of one Wallace, in which he states that he was one of the jury in the cause, and that the district attorney, in his speech to the jury, referred to the fact that some of the defendants had not testified. The state then filed the affidavit of the district attorney, in which he states that, in his address to the jury, he said "it was not fair to presume that Sophia Graham and Hattie Dillon remembered the facts of this case as testified by Alexander Graham and John Dames, and it is not fair to presume anything not testified to." It seems to be undisputed that the district attorney did refer to the fact that a part of the defendants had not testified. There is indeed no conflict between the affidavits. Taking all the affidavits to be true, it appears to us that the district attorney must have claimed, in substance, that, while Sophia Graham and Hattie Dillon were guilty, and knew that Alexander Graham and Dames had testified falsely, and while they would probably themselves have testified falsely if they had testified at all, they had not testified, and, therefore, no testimony of theirs was in the case. The statute is explicit that the district attorney shall not refer to the fact that the defendant did not testify in his own behalf. There is nothing which he can say about the fact that will justify a reference to it, and courts should hold district attorneys to a strict observance of their duty in this respect. We think the court erred in not sustaining the motion for a new trial. The case must be remanded for another trial.

REVERSED.

*2. CRIMINAL practice: misconduct of district attorney.*