WILLIAM W. WILLINGHAM, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The duty imposed by statute upon the Clerk of the Circuit Court to draw from the box the names of persons to serve as grand jurors at a term of the court may be performed by a deputy.

2. When separate paragraphs or parts thereof of a charge to a jury are excepted to, the whole charge should be considered, and if considered as a whole the charge is free from the defects alleged, the exception should be overruled.

3. The Judge charged the jury upon the subject of intoxication and insanity. There was no testimony as to the prisoner being a drunkard, or that he had been drinking, or was at the time of the killing under the influence of liquor, or as to any insanity or mental aberration or delusion, and nothing calculated to raise a reasonable doubt as to his being sober, and free from such mental affliction; *Held,* That the refusal of a new trial should not be reversed even if there was error in the charge, the verdict being clearly sustained by the evidence and nothing appearing calculated to mislead the jury or to operate injuriously to the prisoner in view of the facts of the case.

4. Objection to the argument of counsel as being beyond the evidence or otherwise improper should be made at the time of such abuse of the right or privilege of argument, and action of the court overruling the objection, and the fact that exception was taken to such ruling should appear, with the objection, in the bill of exceptions, in order to obtain a review of the ruling by the appellate court.

5. Where an objection to remarks of counsel as violating the right or privilege of argument, or other objection of a similar character, is made in the trial of a cause before a jury, and no ruling of the court thereon is shown by the bill of exceptions, the objection will be held to have been waived. Likewise, if an adverse ruling is shown, but no exception thereto.

6. No exception to the omission of the Clerk of the Circuit Court to put the usual file mark on an indictment which has been pleaded to and of which the record shows due presentation by a grand jury in open court, can be raised primarily in the appellate court.

Such omission, is of no practical consequence to the prisoner under such circumstances.

Writ of Error to the Circuit Court for Polk county.

The facts of the case are stated in the opinion.

*J. F. McClellan* for Plaintiff in Error.

The first error is well taken. The grand jury that found the indictment were selected by the Deputy Clerk, the Sheriff and the County Judge, of Polk county. The indictment was found at a special term of the Circuit Court. It is presumed action to procure the grand jury was had under an order of the Judge under sec. 11, p. 622, McC.'s Digest, and that the " Clerk " was ordered to draw the grand jury as there provided.

By the provisions of section 8, McC.'s Digest, sec. 621, being sec. 3, Act of February 17, 1877, " the Clerk of the Circuit Court, in the presence of the Sheriff, or Deputy Sheriff, and the County Judge, or, in his absence, a Justice of the Peace of the county, shall proceed to draw from the box the names of not less than fifteen, nor more than eighteen, persons to serve as grand jurors at such court." The language of this statute is plain and unambiguous. There is no obscurity about it ; the offices of Clerk, Sheriff, (Deputy Sheriff,) Judge of County Court and Justices of the Peace, are offices created by the Constitution in this State, and do not rely upon the common law for their existence. This is a statute imposing a duty—a power in a particular case, where personal trust or confidence is reposed in the agent, where his discretion is to be exercised. The authority is purely personal and cannot be delegated. Sedgwick on Statutory and Constitutional Law, 386, *et seq. ;* 14 Texas App., 505, Holly vs. The State.

That statutes are to be construed by the intentious of the law maker as appears from the language used in the statute. This statute directs and commands " the Clerk of the Court" to draw the names from the box, and not his deputy. It does not say the clerk or his deputy shall draw the names. But it does say that the sheriff or deputy sheriff and County Judge may witness the drawing of the names of the jurors. If it was or had been intended by the law makers that the duty of drawing the jurors should in any case be discharged by the clerk's deputy they would have said so, as they do say the sheriff or deputy sheriff shall witness the drawing. This duty imposed upon the clerk was clearly personal, and not intended to be delegated to a deputy clerk. Vide secs. 7, 8, 9, 11, 12, 13 and 35, McC. Digest, 621–2, 623 and 625. See act of 1868, to which act of 1879 is an amendment. The act of February 12, 1834, empowers Clerks of the Circuit Court to appoint deputies for whose acts they shall be liable. And by the act January 13th, 1849, deputies are empowered to administer oaths as clerks could. Clearly under the act of 1834 the Legislature of 1849 thought deputies had no power to administer oaths. And under the act of 1834 the deputy clerk could only perform such acts as liability to third persons would attach to if performed in differently or improperly. The fact that clerks had the power to appoint deputies does not prevent the Legislature from declaring that duties could be imposed upon the clerk that were personal and could not be delegated to another, to wit: a deputy.

The duty of selecting a grand jury is probably the most important duty imposed upon a clerk, none could be more so, and the Legistature never intended it should be delegated to another—a deputy.

The best rule by which to arrive at the meaning and intention of a law *is to abide* by the words the law maker has

used. U. S. vs. Bright, Brightly R., 2; 5 McLean, 178; Devereux C. C. R., 158; 1 Green, 240; Dwarris, 179. As to intention in construing statutes, it must be collected from the statute. Dwarris, 182. When the meaning is plain and unambiguous, its language. Dwarris, 183, reciting 10 Peters, 524. Laws imposing duties are not construed beyond the natural import of the language. 2 Story R., 369; Dwarris, 190, note; Dwarris, 192, and note 12, 193. It will doubtless be said by the Attorney-General that the act imposed by the statute upon the clerk of drawing the grand jury is ministerial and not judicial, and therefore may be delegated to deputy. The general rule at common law seems to be that ministerial duties that are strictly speaking to be performed officially may be delegated. But the language of a statute imposing official duties is not to be departed from because of this rule, when that language is clear and unambiguous. When the language is clear, positive, definite and certain—when the act involves judgment and discretion and great responsibiliy—the authority cannot be delegated. Powell vs. Tuttle, New York R., 3 Comstock, 396, and authorities there cited.

The jury statutes of this State are the foundation of all judicial proceedings before a jury that are to affect life, liberty and property. No responsibility or penalty could attach to a deputy assuming to discharge the duty devolved upon the clerk under this statute. His principal could not be held responsible or the penalty imposed under section 35, McC. Digest, 625.

The second and third errors I propose to consider together. The indictment charges the killing on the 4th day of September, 1880, the evidence shows the killing or homicide to have occurred on the 12th day of September, 1880. The indictment was found on the 7th day of July, 1884. More than two years elapsed between the homicide (the

date of the homicide) and the finding of the indictment and the offences under the statute of murder in the *second* and *third* degrees were barred.   The second and third degrees of murder and manslaughter in any degree were barred by the statute of limitations.   Under the indictment a conviction could not be had for a less offence than murder in the first degree because of the bar of the statute.   But this fact did not exclude from the jury the consideration whether the homicide was murder in the second or third degree or manslaughter in the first, second, third or fourth degree, or justifiable homicide.   But the charge of the court did withdraw from the jury the consideration of a lesser offence than murder in the first degree.   The court told the jury that in order to, or before they could, find defendant guilty of murder in the second or third degree, or manslaughter in any degree, they must be satisfied that such alleged killing occurred in Polk county, Florida, within two years before the finding of the indictment.   Then if you take the other charge in connection with this that the jury should " carefully examine every fact and circumstance surrounding the case, and if you have no reasonable doubt in your mind as to the defendant's guilt, you shall convict him of murder in the first degree."   This charge excluded from the jury all offences of a lower grade than murder in the first degree, and is in conflict with the law as laid down in the case of Dukes vs The State, 14 Fla., 499 ; Brown vs. The State, 18 Fla., 472.

4th Error. This instruction is not law.   It is too abstract.   It is not sufficiently explicit to put the jury in possession of the law governing insanity from drunkenness or other causes.   50 Alabama, 149, 151 and 152.

The fifth and sixth errors may be considered together. This whole subject has been recently passed upon in the case of Newton vs. The State.   I think the reprehensible

language of the associate prosecuting attorney in this case far more objectionable than that in the Newton case, for which a new trial was granted by this court. Newton vs. The State, 20 Fla.; Balch vs. The State, 31 Kansas, 465.

There is a Texas civil case on the same point.

Upon the additional error assigned I refer to the cases of Collins vs. The State, 13 Fla., 651; Hatton vs. The State, 2 Florida.

The seventh, eighth and ninth errors I don't desire to discuss, and the tenth error I have already discussed.

*Walter R. Yates* on same side.

The evidence does not justify a verdict of murder in the first degree, in that it lacks that premeditation necessary to constitute the crime of murder in that degree.

Willingham first appears in a dangerous dug-out or boat in a swollen stream, more swollen than it had been for years; urged to come out of it he refuses and attempts to cross the stream. He overturns and is thrown into the river, and upon hollowing for help is found going under the water for the third time, as one witness testifies. Handed into the flat in that condition, he is cautioned by one of the negroes to mind how he walks, or he will fall out. Approaching McLaughlin he seizes him by the collar and fires at him. He certainly could not have intended to hit him for he had it in his power then to have at once killed him. McLaughlin stoops down and throws him by his feet into the river again.

Endeavoring to save his life he clings to the flat and as he is climbing in McLaughlin is stooping down to pick up a pole to hit him; he fires and McLaughlin jumps overboard wounded. Willingham at the time he fired the fatal shot had good reason to believe that he was to be knocked back

into the river and left to drown. The excitement of his previous experience in the river, going down for the third time when caught, must have unsettled his mind.

When the affray is over do we find him escaping or trying to escape? Not at all. He is found wandering through the creek swamp, and returns to Fort Meade and mingles amongst the people, and speaks of the affray in justification.

That the jury had doubts in their own minds as to the facts and condition of Willingham is evidenced by their recommendation to mercy, and their verdict would have been different, in my opinion, had not the open threats been made by the Assistant State Attorney. These threats were manifest error and could not help influencing the jury.

The plea in abatement was well taken. The law evidently intends that the Clerk shall be present at the drawing of the jury. It provides that in the absence of the County Judge a Justice of the Peace can act. In the absence of the Sheriff his deputy can act; but no provision is made for the absence of the clerk. He is the legal custodian of the box and could tell if the box had been tampered with. Therefore, the law requires him to be by and assist in the drawing. No law should be construed more strictly than the law which provides for the drawing of the jury, and the law never contemplated that the Deputy Clerk should draw the same.

*The Attorney-General* for Defendant in Error.

The first assignment of error is that the court erred in sustaining demurrer to the plea in abatement that names of grand jury were drawn from the box by the Deputy Clerk. This objection is frivolous. The Clerk of the Cir-

cuit Court is a ministerial officer, and has a right to appoint a deputy by common law, but that right is also confirmed by statute. McClellan's Digest, p. 174, sec. 3. The deputy can do anything pertaining to the office that the principal can do except to appoint a deputy. Drawing names of jurors from the box is a part of the routine business of the clerk's office; a more ministerial function can hardly be imagined. If there is ever any " discretion and skill " exercised by the Clerk in this drawing, it certainly is not contemplated by law. Counsel asks, why the Deputy Sheriff should have been mentioned in the act and not the Deputy Clerk? McClellan's Digest, sec. 8, p. 621. If any answer is required further than that, the insertion of " Deputy Sheriff " in said act was mere surplusage, and if we are to look for fine and hidden meanings in its words, it may well be that the Legislature thought that it required some "skill and discretion," on the part of the Sheriff to watch the Clerk, and to see that the latter officer did *not* exercise " skill and discretion " in drawing the names out of the box; therefore, that the Sheriff's duties were not merely ministerial, and it was necessary to give specific power to his deputy, whereas, the duty of the Clerk being so obviously ministerial, it was not thought necessary to name his deputy. Without making further excursions into fields of conjecture, the following cases are cited in case the court should care to read authorities on the point. McKinnon vs. McCollum, 6 Fla., 376, 379, 380. Abrams vs. Irvin, 9 Iowa, 87, 90 ; Whitford vs. Lynch, 10 Kansas, 180 ; Armine & Russell vs. K. P. R. R. Co., 7 Kansas, 178 ; Jacobs vs. Measures, 13 Gray, 74.

The second assignment of error is the court erred in charging the jury. "You should most carefully examine every fact and circumstance surrounding the case, and if you have no reasonable doubt in your mind as to the de-

fendant's guilt, you should convict him of murder in the first degree." The words here excepted to are picked out of that portion of the Judge's charge wherein he charges on murder in the first degree. He had previously instructed the jury as to the different classifications of homicide, and was then charging them on the specific accusation against the prisoner of murder in the first degree. He instructs the jury what they must find in the facts to constitute murder in the first degree, and then, and in that connection, uses the language excepted to, which, in the connection in which it stands in the charge, is simply that the jury must carefully examine all the facts and circumstances of the case, and if they have no reasonable doubt of defendant's guilt of murder in the first degree, they should convict him thereof. The Judge then proceeds to charge them that if they find the killing was not murder in the first degree what their duty is.

The Judge, afterwards, returns to the subject of murder in the first degree, and again charges that if the jury have a reasonable doubt as to the facts necessary to constitute murder in the first degree they should acquit the defendant—i. e., of murder in the first degree; the meaning of the court being clear in the connection, and in the case in which the language is used. The whole charge of the court is to be taken together, and so taken it is full, fair and clear, and not to be misunderstood by any one of ordinary intelligence; nor could it have been of any injury to the defendant who was clearly guilty of murder in the first degree. No exception was taken to the charge at the time, nor before the verdict, and counsel ought not to be encouraged to hold back mere verbal criticisms on the charge of the court, to incorporate in a motion for a new trial under the act of 1883, not bringing them to the at-

tention of the court until after the verdict. In such a case, the doctrine often announced by this court that the judgment will not be reversed unless the defendant has suffered substantial injury from the alleged error, is peculiarly applicable; and this court in such cases has always examined the evidence and determined therefrom whether the defendant has suffered substantial injury in the particular case under consideration. Brown vs. The State, 18 Fla., 472; Irvin vs. The State, 19 Fla., 872–888; Dibble vs. Truluck, 11 Fla., 135–140.

The third assignment of error is that the court erred in charging the jury: "Before you can find the defendant guilty of murder in the second or third degrees, or of manslaughter in any degree, you must be satisfied that such alleged killing occurred in Polk county, Florida, within two years before the finding of the indictment." This charge is exactly a correct statement of the law. The statute of limitations is not to be specially pleaded in a criminal case, but is put in issue under the plea of "not guilty;" and the jury cannot find the defendant guilty of any offense barred by the lapse of time under the statute. Any offense not capital is so barred. Nelson vs. State, 17 Fla., 195.

The fourth error assigned is that the court erred in its charge to the jury on the supject of insanity. As there was no evidence at all in the case, either of fact or of expert opinion, of insanity in Willingham, the charge and the exception are both mere matters of theory; and even if the charge was erroneous, which it is contended for the State it was not, it would not be ground for reversal. Willingham chose to consider himself neglected or injured by the ferryman because that person was not on hand when he, W., wished to cross the river, and, in attempting to paddle the boat across himself, he fell into the water

and came near drowning. In revenge therefor he mur-
dered the ferryman, and attempted to murder his assist-
ants. It is evident that he was a man of reckless, bully-
ing, brutal and revengeful disposition, but there is no
evidence of insanity. "The monstrous barbarity of the
act of killing should not be admitted as a presumption of
insanity." Beasley vs. State, 50 Ala., 153. There being
nothing in the evidence to require a charge on insanity, a
theoretical charge on the subject, whether erroneous or
not, is not ground for reversal. Bryan vs. The State, 19
Fla., 864. But the charge was not erroneous. The pri-
soner being charged with murder in the first degree, the
Judge left it to the jury to determine whether he was
capable of forming a design, and whether he knew right
from wrong. There is no fixed formula for a charge on in-
sanity; the question to be considered is whether the
charge, if material, was in the particular case correct.
1st Bish. Crim. Law, secs. 381–384. That the charge was in
this case substantially correct, is evident from the fact that
the only objection made to it by the able counsel, in his
brief, is that it was too abstract. As the whole subject in
this case was a mere abstraction, the charge could hardly
be otherwise.

The seventh assignment of error may also be disposed of
in this connection. This is, that the court erred in charg-
ing " that every person is presumed sane until the contrary
is shown by competent proof." This point seems to be
abandoned by counsel in his brief. The same argument ap-
plies as above, that there was nothing in the case to show
insanity in the prisoner ; but the charge was correct as law.
Gladden vs. The State, 12 Fla., 563 ; 2d Bish. Crim. Pro.,
sec. 672. It is also to be borne in mind that the numerous
counsel for the prisoner composed a charge on insanity as
a defence, which charge was given by the court, and is to

be taken with the others, so if the matter was not sufficiently elucidated it was their own fault.

The fifth and sixth assignments of error are, that the court erred "in refusing to stop" the associate counsel for the State, in the first instance, and in "not stopping" him, in the second, in using certain language in his argument to the jury. In the first place, the record shows that the court did *not* refuse to stop said counsel. These assignments of error are not tenable for several reasons. They are very different from those, to which they have been compared, in the Newton case. 1st. There are no exceptions upon which these assignments of error can be based. It appears from the record, in the bill of exceptions, that the associate counsel used certain language, on which the fifth assignment of error is based, and that the prisoner's counsel excepted to that language of the said associate counsel. There was no application to the court to stop said associate counsel, or to charge the jury with reference thereto. There was no exception to any action, or failure to act, of the court. The prisoner's counsel, it appears, attempted to make a point for appeal by excepting to the language of said associate counsel, without giving the court any opportunity to correct the matter, if it required correction. No exception lies to the language of counsel. An exception will lie to the action of the court, if the court endorses to the jury, or in their hearing, language of counsel which is highly improper and to the manifest injury of the party excepting. In that case an exception will lie to the action of the court in refusing, on request, properly to charge the jury with reference to such language; but no party can fix an exception on intemperate language of counsel, as soon as uttered, and appeal on that, making no application and giving no opportunity to the trial court to correct it. An exception can be taken only to some action of

the court.   An exception cannot be taken to the testimony of a witness, much less to language of counsel; if the court, after objection, improperly admit a witness to testify, or if the court, on application, refuse to strike out testimony improperly given by a witness, before there was opportunity for objection, such action of the court is ground of exception, but the language of the witness is not ground of exception.   I have examined every case which I have been able to find on this subject, and in every one of them, with a single exception hereafter explained, the error assigned was some action of the court in refusing to stop counsel in the use of improper language or in refusing to charge the jury correctly thereon.   In no case, that I have been able to find, has the language of counsel itself been held to be ground of exception or reversal, with the single exception above alluded to, viz:  the case of The State vs. Balch; and there the language of the State's attorney was itself made a ground of exception and error, apart from the action of the court, by the peculiar language of the statute.   See 31 Kansas, 468.

As to the 6th assignment of error, there was no exception whatever taken on which to base it, either to the language used by counsel or to any action of the court in the premises.   Exceptions must be taken to some action of the court at the time of the ruling.   Gallaher vs. The State, 17 Fla., 370.

The 8th and 9th assignment of error, "that the verdict is contrary to the law and the evidence," seem to be abandoned by the counsel for plaintiff in error—certainly the evidence speaks for itself and the conviction requires no argument to support it.   So far as any alleged errors of law have been specified, specific answers are made.

The 10th assignment of error, "that the court erred in

overruling the motion for a new trial," has been already answered.

The additional assignment of error, " that the indictment, upon which the prisoner was tried, was never made a part of the record, by the Clerk of Polk county Circuit Court placing his file mark upon the same," is frivolous. The file mark of the clerk is only an evidence of the deposit of a paper in the court. In some cases this file mark may be essential, because there is no other record evidence of the fact which the file mark is intended to attest, but where an indictment is presented to the court, and the record shows that fact, a file mark on the indictment itself is not necessary. The record in this case shows that the indictment was presented by the grand jury in open court; that it was ordered filed by the court, and that the prisoner pleaded to it.

" It is sufficient if upon the record there is enough to show a delivery of the indictment into court by the grand jury." Collins vs. The State, 13 Fla., 659.

Mr. Justice Raney delivered the opinion of the court:

The plaintiff in error was indicted, at a special term of the Circuit Court held in Polk county in July, A. D. 1884, for the murder of William McLaughlin in September, A. D. 1880. He was tried at the same term, and convicted of murder in the first degree, but recommended by the jury to the mercy of the court, and was sentenced to imprisonment in the State Penitentiary at hard labor for the term of his natural life. There was a motion in arrest of judgment and for a new trial, but it was overruled prior to the sentence. The errors assigned, and the proceedings upon which they are based, are set forth in the opinion.

I. The prisoner pleaded in abatement of the indictment

that the grand jury which found it was drawn from the box by a deputy of the Clerk of the Circuit Court, instead of the clerk in his own person, and that hence the jury was illegal. This presents the question whether or not under the statutes of this State the drawing of a grand jury can be done by a deputy clerk. The Board of County Commissioners select from the list of registered voters, and make out a list of three hundred (or the next highest number possible) persons properly qualified to serve as jurors. They are to be such persons only as the Commissioners know or have good reason to believe are of approved integrity, fair character, sound judgment and intelligence. This list is certified and signed by the Chairman of the Board, delivered to the clerk, and by him recorded in the minutes of the Board. Sec. 7, page 621, McC's. Digest. It is also provided (§8) that on receiving such list " the clerk of the Circuit Court shall write the names of the persons contained therein on separate pieces of paper so that the names written thereon shall not be visible, and shall deposit such pieces of paper in a box so constructed that it may be tightly closed." This section further provides that at least fifteen days before the sitting of any regular term of the Circuit Court at which a jury shall be required, "the Clerk of the Circuit Court, in the presence of the sheriff or deputy sheriff and County Judge, or, in his absence, a Justice of the Peace of the county, shall proceed to draw from the box the names of not less than fifteen, nor more than eighteen, persons to serve as grand jurors at such court." This drawing is the duty under consideration. It is also provided that " the drawing of such jurors shall be publicly made in the court house of each county and the time and place of such drawing shall be advertised ten days before the day of said drawing by written notices posted at three public places in said county, and the sheriff shall proclaim

the meeting and its purposes at the door of said court house on the the day of drawing said jurors." By another section the Judge of the Circuit Court is given power to order the clerk to draw grand and petit jurors for a special term in the same manner. §11, p. 622. The drawing in question was for a special term.

There is nothing in the duty or function of drawing the pieces of paper or " names " from the box that is judicial in its character, or involves the exercise of discretion, or personal skill. Nothing could be more ministerial. The measure of ability or skill which its performance requires is the smallest. The language of the statute does not indicate that the personal judgment of a clerk himself is relied on. Ordinary intelligence and simple honesty are all that are required by the nature of the duty.

There is no doubt as to the power of a Clerk of the Circuit Court to appoint a deputy. Section 3, of page 174, of the Digest, provides that he " shall have the power * * of appointing a deputy or deputies for whose acts, as such," he " shall be held liable." This section says nothing as to what the powers of the deputy shall be.

In Comyns' Digest, title, Officer, (D. 3,) it is said a deputy has power to do every act which his principal might do, * * but that a deputy cannot make a deputy, as this imports an assignment of all his authority, which is not assignable. In Bacon's Abridgement, Officer, (L,) it is laid down that offices of inheritance for years, and those which require only a superintendency and no particular skill may regularly be exercised by deputy. A Sheriff, says the same authority, though he is an officer made by the King's letters patent, and though it be not said that he may execute his office *per se vel sufficientum deputatum suum* yet he may make a deputy, which is the under sheriff, against whom action may be brought by the parties grieved. * * A

judicial officer cannot, it is said, make a deputy unless he hath a clause in his patent to enable him ; because his judgment is relied on in matters relating to his office which might be the reason of the making of the grant to him ; neither can a ministerial officer depute one in his stead if the office be to be performed by him in person ; but when nothing is required but a superintendency in the office, he may make a deputy.  Ibid.   From the same authority we learn that a coroner could appoint a deputy to do ministerial acts, but not those of a judicial character.   Bouvier says that in general, ministerial officers can appoint deputies unless the office is to be exercised by the ministerial officer in person ; and where the office partakes of a judicial and ministerial character, although a deputy may be made for the performance of ministerial acts, one cannot be made for the performance of judicial acts; a Sheriff cannot, therefore, make a deputy to hold an inquisition, under a writ of inquiry, though he may appoint a deputy to serve a writ.   In general, a deputy has power to do every act which his principal might do, but he cannot make a deputy.   Bouvier's Law Dictionary, title, Deputy.

In McKinnon vs. McCallum, 6 Fla., 376, it was held that a deputy Clerk of the Circuit Court could administer an oath.   No reference is made to the statute expressly authorizing a deputy Clerk to do this, and it would seem that his power was recognized as existing independent of the statute.   In Iowa, the Clerk of the District Court was given power to take acknowledgements of deeds.   He was also authorized to appoint a deputy to discharge the duties of the Clerk.   It was held in Abrams vs. Ervin, 9 Iowa, 91, that the deputy could take an acknowledgement of a deed.   In the opinion it is said that where the duties of a public officer are of a ministerial character they may be discharged by deputy, but that those of a judicial charac-

ter cannot be so discharged, and that the Clerk is a ministerial officer, and when the law gives him power to appoint a deputy, such deputy, when created, may do any act that the principal might do. McRaven vs. McGuire, 9 S. & M., 34; Beaumont vs. Yeatman, 8 Humph., 542; Hope vs. Sawyer, 14 Ill., 254. In Ellison vs. Stevenson, 6 T. B. Monroe, 271, it is held that a deputy Clerk may allow the claims of witnesses and tax costs.

It seems to us that as a general rule all purely ministerial functions of the clerk can be performed by a deputy, and that such is the character of the drawing in question. Of course, it would be competent for the Legislature to provide, either expressly or by implication, that certain purely ministerial duties should be performed by the Clerk in person. It is contended that the language of this act shows such an intention in the fact that the eighth section expressly provides that the drawing may be in the presence of the deputy Sheriff, as one of the witnesses, and does not provide expressly that the deputy Clerk may do the drawing. We think the true construction to be placed upon the use of the term "Deputy Sheriff," is that the purpose of the Legislature was to settle the doubt as to whether, without such term, a deputy Sheriff would be an authorized witness of the drawing. This is a more reasonable construction than to hold its use to be a limitation of the general power of the deputy of another officer. There is no express provision in any part of this statute for the performance, by a deputy, of any other function of the Clerk; no such discrimination exists in it. All the duties are imposed upon the officer, and show an intention that they should be considered as official, and not " personal" acts of the Clerk.

Any authority seeming to conflict with our conclusions will be found, on careful examination, to involve the exer-

cise of a discretion or personal judgment. The importance of a duty does not of itself change the real character of the duty, nor the rules of construction.

We do not mean to say there are no duties which cannot be performed except by the Clerk in person. We are dealing only with the question before us.

II. The *second* assignment of error is as follows: "The court erred in instructing the jury, 'you should most carefully examine every fact and circumstance surrounding the case, and if you have no reasonable doubt in your mind as to the defendant's guilt you should convict him of murder in the first degree;'" and the *third* assignment is that the court erred in instructing the jury: "but before you can find the defendant guilty of murder in the second or third degree, or of manslaughter in any degree, you must be satisfied that such alleged killing occurred in Polk county, Florida, within two years before the finding of the indictment."

These two assignments are considered together by counsel for the plaintiff in error. He says in his brief that the indictment charges the killing to have been done on September 4th, 1880, and the evidence shows it to have occurred on the 12th day of that month, and that the indictment was found on the 7th day of July, 1884. He argues that more than two years having elapsed between the date of the homicide and the finding of the indictment, the offences of murder in the second and third degrees, and manslaughter, were barred, and no conviction could have been had of a less offence than murder in the first degree; but that this fact did not exclude from the jury whether the homicide was one of such lesser offence, or justifiable homicide. He contends, however, that the charge of the Judge did in fact withdraw from the jury the consideration of a lesser offence than murder in the first degree.

The charge of the Judge defines the different degrees of murder and manslaughter as they are defined in our statutes. It then, in a separate paragraph, instructs the jury that if they find from the testimony that the prisoner, in the county of Polk, and State of Florida, unlawfully made an assault upon McLaughlin with a pistol, with a deliberate and premeditated design to effect McLaughlin's death, and that in pursuance of such deliberate and premeditated design on the part of the defendent to effect McL.'s death, he shot with a pistol and inflicted on McL. a wound, of which he, McL., subsequently died, *and that such alleged killing was not murder in the second or third degrees, or manslaughter in some one of the degrees thereof, or was not excusable or justifiable*, they should find him guilty of murder in the first degree. It then defines premeditation, and then comes, in the same paragraph, the sentence copied into the "second assignment of error," and it is followed by instructions to acquit if there is a reasonable doubt of the prisoner's guilt. It is perfectly clear that in this paragraph the Judge is charging upon the offence of murder in the first degree, and yet the words we have italicised show a careful guard against withdrawing from the jury the consideration of the lesser offence than murder in the first degree. Considering the whole paragraph it is plain that the language quoted in the assignment of error is to be read in the light of that italicised, and must have been understood by the jury as referring to "guilt" of the particular offence under discusssion, murder in the first degree, as distinguished from the lesser offences, and from justifiable and excusable homicide. Moreover, in the next paragraph, the Circuit Judge charged that if the jury found that the prisoner killed McLaughlin, and the alleged killing was not murder in the first degree, they could find him guilty of murder, or manslaughter in any of the degrees

thereof, if the testimony warranted it, and then as a part of the same sentence follows the language quoted in the third assignment of error.

It is hardly just to a charge to take a sentence from one paragraph and a part of a sentence from another, and make these the basis of an exception, independent of other parts relating to the same subjects. Smith vs. Bagwell, 19 Fla., 117.

It is alleged that the sentence quoted in the second assignment is in conflict with the decisions of this court. Dukes vs. The State, 14 Fla., 499, and Brown vs. The State, 18 Fla., 472. No attempt is made to show wherein such conflict exists. We have read the charge carefully and it is sufficient to say that considering it as a whole we see no conflict with the doctrines of either of the decisions.

III. The fourth assignment of error is that there was error in instructing the jury: "and you are furthur instructed that before you can acquit the defendant on account of intoxication, or that at the time of the alleged killing he was laboring under an aberration of mind from any other cause, you must be clearly satisfied from the testimony that the defendant was at the time in such a state of mind that he was not capable of forming a design or intention, and that he was not then capable of judging right from wrong." It is urged that this instruction is not law; that it is too abstract, and not sufficiently explicit to put the jury in possession of the law governing insanity from drunkenness or other cause.

This is, however, not all that was charged by the Judge on the subject. He also instructed them, at the request of the prisoner's counsel, as follows: "If the jury believe from the testimony, ascertained from the actual words of the witnesses themselves, or from the acts and doings of the defendant by the witnesses related, as to his conduct in

the boat and in the water, and you believe from the use of liquor or the shock of falling into the water, or a mortal fear of drowning, or from any other cause, the defendant was laboring under a mental delusion, or a temporary aberration of mind, and that *at the time* of the shooting he did not know right from wrong as to the shooting, the defendant is not punishable by law, and you must find him not guilty, as an insane man, under the law, cannot commit any offence whatever. If the jury have any reasonable doubt as to the sanity or insanity of the defendant at the time of the shooting, the defendant is entitled to the benefit of such doubt, but the jury must be satisfied beyond a reasonable doubt as to the actual condition of his mind at that time, and they must be satisfied that his mind was in such condition that he did not know right from wrong to entitle him to an acquittal on that ground." The Judge also charged that every man is presumed sane until the contrary is shown by competent proof.

There is in the bill of exceptions no testimony to the effect that the prisoner was a drunkard, or had been drinking, or was at the time of the shooting, or even the morning after, under the influence of liquor; nor is there any evidence as to any insanity, aberration of the mind, or mental delusion, or from which either could, in our opinion, be legitimately or reasonably inferred, and the jury, by their finding, having shown that such was their opinion of it. There is unquestionably no testimony which could have raised a reasonable doubt as to the prisoner being sober, or as to his sanity, or freedom from mental aberration or delusion. There is nothing in the testimony through which the instruction excepted to, taken alone, or in connection with that given at the prisoner's request, and that as the presumption as to sanity, could have misled the jury, or have operated injuriously to the prisoner, even ad-

mitting there is any inaccuracy in it. Considered with reference to the questions of intoxication and insanity, the verdict is as favorable to the prisoner as could have been rendered, in view of the testimony. Any error in the charge is not material, but is error without injury, and not ground for reversal. Metzger vs. The State, 18 Fla., 481; Brown vs. The State, 18 Fla., 472. This is so plain that we feel it is unnecessary to carefully review all the vexed authorities, and lay down a precise rule upon the questions involved. We feel that the fact that the Circuit Judge charged at all upon the questions is attributable, in a very great degree, to desire to avoid a possibility of any injustice to the prisoner.

IV. The fifth error assigned is that the court refused to stop Mr. G. A. Hanson, one of the counsel for the State, from stating to the jury " that the defendant's counsel relied on his money and standing to secure his acquittal ;" and the sixth error alleged is, the court erred in not stopping said counsel from stating in his argument to the jury " that if they did not convict the defendant, they, themselves, would deserve to be swung up around the Temple of Justice."

No objection to the latter of these remarks was made, so far as the record shows, at the time it was uttered, nor until after the verdict; and though the bill of exceptions shows that counsel for the prisoner " excepted " to the former remark, no refusal to stop counsel for the State or other action of the court appears to have been taken, or to have been requested. If counsel for the prisoner thought they were of sufficient importance to ask the interference of, or a ruling from the Judge, or even an admonition from him to the jury that no weight should be attached to them, the record does not show it. In the absence of such a showing we must conclude that there was an abandonment

of the objection even as to the remark as to reliance "upon money and standing." Godwin vs. Bryan, 16 Fla.. 396; Laber vs. Cooper, 7 Wall., 570. Not until the motion for a new trial was made was any action of the court requested or taken. This is too late. The act of 1883, (Chapter 3431,) permitting a postponement of an exception to a charge to a jury till after verdict, relates to nothing else.

The old rule that a party cannot rely with confidence on the strength of his case, take no exceptions to matters as they occur, and afterwards claim the right either through a motion for a new trial, or otherwise, to have matter already acquiesced in and accepted by him, reviewed in an appellate court, stands otherwise unmodified. Coker & Schiffer vs. Hays, 16 Fla., 368; Godwin vs. Bryan, 16 Fla., 396; Southern Express Co. vs. VanMeter, 17 Fla., 783; Potsdamer vs. The State, 17 Fla., 895; Jenkins vs. Merritt, 17 Fla., 304; Tuten vs. Gazan, 18 Fla., 751.

There is really no such thing as an exception to a remark of counsel as a matter to be reviewed in this court. It reviews the action of the lower court, and where counsel have any objection to anything they should get a ruling from the Judge of the latter court, and if it is adverse, should except to such ruling and have it noted, and bring the ruling, with the circumstances on which it is based, and the exception as noted, here for this court's review of, and decision upon, such ruling. Where an exception is to ruling of the court, it is indispensable that the ruling should be stated, and it should also be alleged that the party then and there excepted. Pomeroy's Lessee vs. Bank of Indiana, 1 Wall., 592. In Laber vs. Cooper, 7 Wall., 571, in speaking of the testimony of a witness, it is said " it appears that the admission of a part of it was objected to by defendant, but it does not appear that the objection was overruled and exception taken. It only appears that

the testimony was admitted after the objection was made, *non constat*, but that the objection was waived, or the decision acquiesced in.". See also Mutual Life Insurance Co. vs. Snyder, 3 Otto, 893 ; Gallaher vs. The State, 17 Fla., 370. The record before us does not show that the Circuit Judge refused to arrest the counsel in his remarks, or to otherwise act.

We are referred by counsel for plaintiff in error to the cases of Newton vs. The State, 21st Fla., and The State vs. Balch, 31 Kansas, 465. There is nothing in Newton vs. State inconsistent with the above views, but in so far as that case gives any intimation as to the proper practice in such matters it sustains our conclusions. In one of the instances in that case where objectionable remarks of the State Attorney were passed upon, the court, in answer to the objection of prisoner's counsel that the State Attorney was stating that which was not in evidence, said : " He is only using it as an argument," thus overruling the objection, and the prisoner's counsel said : " Well, I except to that style of argument being used," and this was incorporated into the bill of exceptions and treated as an exception to the ruling of the Judge. In the other instance in the same case, although this court remarks that facts not in evidence should not be stated or discussed, yet it observes that " the attention of the court does not appear to have been called to the remarks, * and no exception appears by the bill of exceptions to have been taken." We think no notice would have been taken of the second instance by this court, but for the fact that there was the former in which a ruling and exception appears, and the further fact that the case had to go back for a new trial on the " former " and other grounds and the court desired

to make known its views in aid of proceedings in a new trial.

The case of Balsh vs. The State of Kansas, is as follows: In that State the statute provides that a defendant in a criminal case may testify in his own behalf if he chooses, and further, " that the neglect or refusal of the person on trial to testify shall not raise any presumption of guilt, nor shall that circumstance be referred to by any attorney prosecuting the case, nor shall the same be considered by the court or jury before whom the trial takes place." The prosecuting attorney remarked that Balsh had failed to go on the witness stand and deny that he had not signed or circulated the libelous paper which he knew to be in circulation and to bear his name. The District Judge informed the prosecuting attorney that his remark was improper, and told the jury to pay no attention to it, and that under the law defendant had a perfect right to refrain from testifying without having the failure to testify commented on or even alluded to by the State, and that the jury would violate their duty if they considered at all Balsh's failure to testify. The prosecuting attorney thereupon stated to the jury that he had forgotten, and had probably gone beyond what he should have done. After referring to these remarks and admonitions, the Supreme Court says : " But under the authorities the evil done by such an infringement of law—an infringement of law by the prosecuting officer of the State—cannot be remedied or cured by any mere instruction from the court. The only complete remedy, if the defendant is convicted, is to give him a new trial." In Indiana, under a somewhat similar statute, a somewhat similar view is taken, the court deeming any violation of the statute as error of law. Long vs. State, 56 Ind., 186. See also Hatch vs. State, 8 Texas Ct. Ap., 416 ; State vs. Graham, 62 Iowa, 111.

In Illinois, the statute permitting the defendant in a criminal case to testify, provides that his neglect to testify "shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." In Austin vs. State, 102 Ill., 261, it was held that "any allusion to or comments by the prosecution in a criminal case on the fact that the defendant has not testified in his own behalf, especially when allowed by the court over the defendant's objection, is such a violation of the letter and spirit of the statute, and such an error, as to require a reversal of a judgment of conviction, where the proofs of guilt are not so clear and conclusive that the court can affirmatively say the accused could not have been harmed for that cause." See also Com. vs. Scott, 123 Mass., 239 ; Com. vs. Harlow, 110 Mass., 411 ; People vs. Tyler, 36 Cal., 522.

The Kansas case refers to those from the other States. In the Kansas, Indiana, Texas, and it would seem, the Iowa, cases, violation of the statutes is construed or treated as error of law from which a writ of error or appeal may be prayed as of right, but in the other cases there was error in the action of the lower courts. These cases do not, however, involve the question we are dealing with. In Indiana, moreover, in the case of Morrison vs. State, 76 Ind., 335, where the question was, like that before us, one of the abuse of the right of argument, it is held that if the argument goes beyond the evidence objection must be made at the time and the specific grounds of objection stated, and that none not so stated will be available on appeal. In Newton vs. State, this court, in concluding its observations on the first remarks of the State Attorney objected to, says: "The court, in the exercise of a sound discretion, should have prevented or stopped them, or advised the jury that they were not to be considered by them," and in

North Carolina the Supreme Court, in State vs. Under-
wood, 77 N. C. Repts., 503, a case of similar character,
where the District Judge trying the cases had remarked
" there is no evidence of this, and this case must be tried
on the evidence," say : " this was all that we see he should
have done, and whether he should have emphasized his
language or reproved the counsel was a matter of sound
discretion with the Judge." We have seen no case where
it is held that an abuse of the privilege of argument is
held error of *law* from which a writ of error or an appeal
may be prayed as of right in the absence of a statute like
those in Kansas, Indiana and Texas. In Potsdamer vs.
The State, 17 Fla., and So. Ex. Co. vs. VanMeter, Ibid, there
is consideration of the question of when the violation of
a statute is such error.

Our conclusions are consistent with the practice of this
court in all cases where the error is not one *apparent on the re-
cord*, as in Hinote vs. Simpson & Co., 17 Fla., 444; Jones, Var-
num & Co. vs. Townsend, 21 Fla.

We do not mean by anything we have said to intimate
that it would not have been perfectly proper for the Judge
to have checked the counsel and admonished the jury
against considering the remarks. All the authorities are
to this effect.

V. The 8th, 9th and 10th assignments are that the ver-
dict is contrary to law, and to the evidence, and that the
court erred in overruling the motion for a new trial.
These assignments are practically, if not expressly, aban-
doned. There is clearly nothing in them.

VI. The only remaining assignment is that the indict-
ment upon which the prisoner was tried was never made a
part of the record by the Clerk of Circuit Court placing his
file mark on the same. No such point appears to have been
made in the lower court. It comes too late. The record

shows that the indictment was presented by a grand jury in open court and ordered by the court to be filed; that there was a plea in abatement on another ground, which was overruled, and then a plea of not guilty. The mere absence of the file mark under such circumstances is an omission from which no practical advantage can be derived. The file mark is but one evidence of a paper having been filed. The objection should have been made, for what it was worth, in the lower court. Collins vs. The State, 13 Fla., 659; Bass vs. The State, 17 Fla., 685; Gallaher vs. The State, Ib., 370; Francis vs. The State, 6 Fla., 306.

The judgment is affirmed.

[The opinion in this case was filed at the June Term, 1885, but it was ordered, on application of plaintiff in error, that he have until the January Term, 1886, to file a petition for a rehearing. At the latter term such petition was filed and rehearing denied.—REPORTER.]